**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Wostrel, | No. CV-22-00312-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, Arizona Department of Child Safety, Michael Faust, Amber Gattie, Emelinda Diaz, Cheryl Kelly, Paulinius Obika, Nicholas Long, Jennifer Alexander, Nicole Kaplan, Bryan Adams, Kristen Wright, Unknown Wright, Chelsea Herzaft, Unknown Herzaft, Gregory McKay, Bonnie Platter, and Unknown Platter, | |
| Defendants. | |

Pending before the Court are motions to dismiss filed by Kristen Wright (Doc. 34), Bonnie Platter and Chelsea Herzaft (Doc. 41), and State of Arizona, Arizona Department of Child Safety ("DCS"), Michael Faust, Amber Gattie, Emelinda Diaz, Cheryl Kelly, Paulinius Obika, Nicholas Long, Jennifer Alexander, Nicole Kaplan, Bryan Adams, and Gregory McKay (the "State Defendants") (Doc. 46). The motions are fully briefed. Amid the motions, Plaintiffs voluntarily dismissed Herzaft (Doc. 58) and Fisher (Doc. 74).[1]

**I. Background**[2]

---

[1] Plaintiff Aaron Wostrel, in his response to the State Defendants' motion to dismiss, also noted that he intended to dismiss all his state law claims against State Defendants, with a proposed motion forthcoming. (Doc. 62 at 1.) No notice, nor accompanying proposed order has yet appeared on the docket.

[2] The following is derived from the first amended (and corrected) complaint (Doc. 38) and deemed true for purposes of this order.

Plaintiff Aaron Wostrel is the father of minor Plaintiffs S.W.,[3] B.W., and C.W. Sheila Lay is their biological mother, and together, the five of them resided in Wyoming until 2015. The couple divorced, and a Wyoming court gave Sheila sole legal and primary custody over the minor Plaintiffs. Sheila moved to Arizona, taking the minor Plaintiffs with her.

While in Arizona, police searched Sheila's home on suspicion of crimes, and DCS interviewed the minor Plaintiffs. DCS was told on January 23, 2017 that there was a custody order in place from a Wyoming court that granted Aaron unrestricted custody of minor Plaintiffs—yet no DCS employee made an effort to contact Aaron. At the end of the month, DCS determined that the minor Plaintiffs were in imminent danger and removed the children under a temporary custody notice. After removing the children, DCS placed them in the care of Walter, minor Plaintiffs' maternal grandfather, and his girlfriend, Jodi. No DCS agent contacted Aaron at any point during this process.

Aaron contacted DCS in February 2017, informing DCS employee Kelly that he planned to move with his wife, Madelynn, from their apartment in Colorado, to Madelynn's parents' house in Wyoming. Once minor Plaintiffs were returned to him, Aaron told DCS, he planned to move into his home in Wyoming.  DCS employee Gattie informed Aaron that he couldn't have custody of the minor Plaintiffs.

Aaron appeared at a preliminary protective hearing in Maricopa County Superior Court, and the court scheduled a dependency trial. At the hearing, DCS stated it would submit a request through the interstate compact on the placement of children ("ICPC") for possible placement with Aaron; however, the ICPC facilitates cooperation between states in the placement of dependent children, and minor Plaintiffs had not been found dependent. DCS also told Aaron he'd have to complete drug testing, which he did the next day.

Not long after, Walter stopped allowing video calls between Aaron and the minor Plaintiffs. DCS initially restricted Aaron's contact to writing letters and supervised phone calls but reinstated Aaron's visitation on the advice of an assistant attorney general.  Before

---

[3] Aaron is the legal but not not biological parent of S.W.

- 2 -

1  Aaron could visit minor Plaintiffs, however, S.W. was hospitalized for suicidal ideation on
2  April 27, 2017. DCS did not immediately inform Aaron of this. Aaron and Madelynn had
3  an unsupervised visit with the minor Plaintiffs shortly thereafter. A few months later,
4  Colorado completed the ICPC report that DCS requested, which concluded that the minor
5  Plaintiffs be placed with Aaron and Madelynn, but DCS did not disclose this report to
6  anyone, including Aaron and the court, even when the court asked assistant attorney
7  general Herzaft about it. Aaron also submitted a mental health assessment.

8        Litigation continued. By this time, Wright had been appointed as guardian ad litem
9  ("GAL") for minor Plaintiffs and filed objections before the court, expressing her concerns
10 about Aaron's ability to parent. The court found the minor Plaintiffs dependent as to Aaron,
11 who appealed and won on appeal. Assistant attorney general Platter was then assigned to
12 the case.

13       Nevertheless, Kelly and DCS employee Obika failed to ensure regular visitation
14 with Aaron. In a progress report signed by Kelly and approved by DCS employee Long,
15 DCS claimed that the minor Plaintiffs continued to be dependent as to Aaron and falsely
16 stated "Colorado has not completed their report; therefore [DCS] does not have the
17 approval of Colorado." As for Platter, she began directing the DCS defendants in their
18 subsequent actions and acted as the decisionmaker in matters concerning services and
19 communication between Aaron and the minor Plaintiffs.

20       In June 2018, Aaron underwent psychological evaluation by Dr. David B. Juliano,
21 but the results of that evaluation were withheld from Aaron by DCS until ordered by the
22 court to disclose them. Around this time, Platter and Aaron sparred over the timing of an
23 in-person visitation with minor Plaintiffs, during which Platter misrepresented court
24 directives to Aaron's attorney.

25       The second dependency trial began, and Platter argued over whether the court was
26 bound to follow the decision of the Arizona Court of Appeals in determining whether
27 emotional harm was proven. Kelly testified at the hearing about her concerns about Aaron's
28 tendency to threaten individuals and his inappropriate behavior with minor Plaintiffs.

Minor Plaintiffs' therapist testified that the minor Plaintiffs suffered from attachment issues that might rot into substance abuse. She also testified that S.W. described Aaron as "mean." Dr. Juliano all but disclaimed his report, stating "I really don't see myself as a value" in light of the "distorted and contorted" process. Nevertheless, he observed that Aaron showed an ability to manage his emotions. Platter also revealed the Colorado ICPC to the court during this trial.

The court ruled for a second time that minor Plaintiffs were dependent. And again, Aaron appealed. During the pendency of the appeal, a best interest assessment was conducted by Dr. Bennett, who concluded that it was in the minor Plaintiffs' best interest to be with Aaron, although S.W. would need some therapeutic intervention to repair the damage between her and Aaron. Platter withheld this report from the court.

At this time, Aaron and Madelynn had moved to Wyoming. Wyoming completed its home study and approved the placement of minor Plaintiffs with Aaron in its ICPC. Again, Platter and DCS failed to disclose the Wyoming ICPC to the parties or the court and took no action with respect to the ICPC.

In September 2019, the Arizona Court of Appeals vacated the family court's order finding the minor Plaintiffs dependent as to Aaron, ruling that insufficient evidence supported the dependency finding and that DCS "failed to prove that that children lack a parent willing and able to provide them with proper and effective parental care and control."

In Wyoming, meanwhile, the Wyoming Family Court determined that it had continuing jurisdiction over the matter and awarded Aaron sole temporary legal custody of the minor Plaintiffs. Platter decided not to follow the order, characterizing it as "invalid."

Nevertheless, Aaron traveled to Arizona to reunite with the minor Plaintiffs. Wright filed a dependency petition, asking the court to place the minor Plaintiffs in the custody of DCS. In her motion, Wright listed the same allegations that had already been rejected by the Arizona Court of Appeals. The court granted the motion, but then dismissed the prior dependency petition and ordered Wright to file a new dependency petition. At that time,

Obika, acting at the direction of Platter, falsified notes to justify the dependency, and Platter submitted these to the court. During all this action, S.W. ran away from Walter and Jodi's home and was admitted to St. Luke's mental health facility for mental health treatment. Platter did not inform Aaron or his counsel of this.

The saga ended when the Arizona Court of Appeals, ruling on a special action, determined that Wyoming had "exclusive and continuing jurisdiction," and ultimately a mandate issued directing the court to return minor Plaintiffs to Aaron. Minor Plaintiffs were reunited with Aaron on April 14, 2020.

**II. Standards**

**A. Motion to Dismiss**

To survive motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

**B. Leave to Amend**

Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). That being said, "[a] district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (*quoting Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir.1996)). The Court considers four factors when determining whether

leave to amend is appropriate: bad faith, undue delay, prejudice to the opposing party, and futility. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility alone justifies denying a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A motion to amend is futile if the amended portion fails to state a plausible claim for relief. *Chabrowski ex rel. ARTBE Enters., LLC v. Litwin*, No. CV-16-03766-PHX-DLR, 2017 WL 2841212, at *2 (D. Ariz. Jan. 19, 2017).

**III. Discussion**

    **A. Wright**

Wright argues that absolute immunity protects her from liability because all allegations against her arose out of her official capacity as GAL for the minor Plaintiffs. (Doc. 34 at 4 (citing *Widdoff v. Wiens*, 45 P.3d 1232, 1235 (Ariz. Ct. App. 2002)).) Before reaching the merits of whether Wright was acting as GAL at all relevant times, the Court will address Plaintiffs' argument that Wright's bad faith actions are not protected by GAL immunity.

Plaintiffs, citing Arizona's special advocate statute, counter that GAL immunity doesn't encompass acts taken in bad faith, and that Wright acted in bad faith. (Doc. 47 at 7 (citing A.R.S. § 8-522(H)).) But that statute treats special advocates and GALs separately. *See* A.R.S. § 8-522(A) (separately listing "special advocate" and "guardian ad litem"). Arizona law views GAL immunity as coextensive with judicial immunity because GALs are court-appointed and are intimately caught up in and serve the judicial process. *Widdoff*, 45 P.3d at 1235. *Widdoff* was unequivocal: "absolute immunity is necessary" for GALs. *Id.* at 1236. The Court sees no legal basis for a bad-faith exception to GAL immunity.

Now, to the merits. Plaintiffs argue that the alleged wrongful acts committed by Wright took place when she was not GAL for the minor Plaintiffs. The Court notes that the first amended complaint ("FAC") alleges "[a]t times relevant to th[e] Complaint, Wright was acting under the color of law as guardian ad litem for Minor Plaintiffs." (Doc. 38 ¶

- 6 -

22.) Nevertheless, the Court will address the timeline specifically. At the latest, Plaintiffs allege that Wright was appointed as GAL by May 26, 2017. (*Id.* ¶ 120.)

### 1. Claim Twelve

Claim twelve alleges that Wright violated Aaron's constitutional rights by (1) questioning a DCS employee about Aaron's mental health records without the juvenile court's permission during a November 2018 hearing and (2) filing the March 24, 2020 dependency petition, which discussed Aaron's mental health records in alleged violation of a protective order. (*Id.* ¶¶ 430, 432.) The questioning clearly falls within the GAL immunity period. The dependency petition timeline is less clear.

Plaintiffs allege that in March 2020, the "juvenile court dismissed the prior dependency petition and then immediately allowed . . . Wright to file [a] new dependency petition[],"[4] arguing that she was no longer GAL after the dependency petition was dismissed. (*Id.* ¶ 270.) Even resolving this apparent contradiction in Plaintiffs' favor and crediting that Wright filed the new dependency petition after the juvenile court dismissed the initial dependency, GAL immunity still applies. The juvenile court specifically granted Wright leave to file a new dependency petition. It makes no sense to conclude that Wright was not acting as GAL when she filed a petition on behalf of the minor Plaintiffs as specifically authorized by the juvenile court. GAL immunity protects Wright from litigation concerning the filing of the March 24, 2020 dependency petition.

### 2. Claim Eighteen

Claim eighteen alleges that Wright engaged in malicious prosecution by filing the March 2020 dependency petition. As explained above, she was acting in her capacity as GAL and is immune regarding this claim as well.

### 3. Leave to Amend

---

[4] Plaintiffs also allege Wright filed the March 24, 2020 dependency petition "just prior to the scheduled hearing" when the first dependency was dismissed. (Doc. 38 ¶ 263.) The Court will resolve this apparent contradiction in Plaintiffs favor, that is, accepting the facts that would be consistent with their argument against GAL immunity.

Plaintiffs seek leave to amend the complaint to allege evidence of Wright's bad faith. Because there is no bad-faith exception to GAL immunity, the Court denies leave to amend as futile.

**B. Defendant Platter**

Platter asks the Court to dismiss all claims against her because prosecutorial immunity bars liability, and if it doesn't, the allegations fail to otherwise state a claim. Prosecutors enjoy absolute immunity from civil suit for any activities that are intimately associated with the judicial process, such as initiating a prosecution and presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). The "function" of the allegedly wrongful actions, not the actor's identity, determines whether immunity applies. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). For instance, acts of advocacy are absolutely protected. *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018). This is true even when for actions characterized as investigative or administrative, so long as those actions "were performed as part of the prosecutor's preparation of his case[.]" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984). Indeed, prosecutorial immunity even protects "malicious or dishonest action." *Imbler*, 424 U.S. at 427.

Several of the allegations are purely prosecutorial actions, relating to Platter's actions or omissions with respect to court proceedings. (*See* Doc. 38 ¶¶ 199, 201, 222, 235, 241-43, 246, 258-59. 271, 407.) Indeed, Plaintiffs implicitly concede this, by characterizing the acts as "prosecutorial vindictiveness."[5] (Doc. 57 at 14-16.) Platter is absolutely immune from civil suit on those actions. Specifically, claim ten, which alleges that Platter made "misrepresentations and/or missions to the Court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth," must be dismissed in its entirety.

The remaining allegations against Platter relate to out-of-court actions where she allegedly directed DCS employees and other persons not employed by the Attorney

---

[5] Plaintiffs cite several cases where prosecutorial vindictiveness justified overturning a conviction or finding that qualified immunity did not apply, appearing to urge the Court to find that prosecutorial misconduct is not protected by prosecutorial immunity. (Doc. 57 at 3-5.) But those cases are inapposite: whether a conviction is overturned or whether qualified immunity applies has no bearing on whether prosecutorial immunity from civil suits for damages covers prosecutorial misconduct.

- 8 -

General's office to take certain actions. (Doc. 38 ¶¶ 26-27, 168-69, 186, 189-190, 193, 247, 278, 280-81.)⁶ Platter argues that these allegations out-of-court actions fail because they are quasi-judicial and thus protected under prosecutorial immunity, fail to state a claim, or else violate the "short and plain statement" requirement of Rule 8. (Doc. 41 at 9-10).

First, quasi-judicial. As Plaintiffs point out in their response, Platter has not carried her burden to identify common law or historical precedent that would characterize the out-of-court actions as quasi-judicial and thus covered by prosecutorial immunity. *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) ("The burden is on the official claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity."). Even appraised of this defect, Platter fails to address this deficiency in her reply. Platter has not shown that prosecutorial immunity shields her from the remaining allegations.

Second, failure to state a claim. Platter's only argument is that, based on a dearth of "sufficient factual matter," "[i]t is simply not plausible, based on the allegations contained in the FAC, that [Platter] would not be entitled to absolute immunity in its case." (Doc. 41 at 10.) In essence, this is a repackaged prosecutorial immunity argument, and, as the Court concluded above, Platter did not meet her burden to show she was entitled to prosecutorial immunity for her out-of-court actions. Platter does, however, argue in her reply that it is not "facially plausible" that an Assistant Attorney General had the ability or authority to direct a DCS employee's, as the FAC alleges. Platter contends she was not DCS employee Fisher's employer or supervisor, and it is not "facially plausible" that Platter can be held vicariously liable for the actions of Fisher. (Doc. 41 at 4 (citations omitted).) As she raised this argument for the first time in her reply, this argument is waived. *Autotel v. Nevada Bell Telephone Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012).

Third, short and plain statement. Platter argues that the remaining allegations did not comply with Rule 8's "short and plain statement" requirement because they are

---

⁶ Plaintiffs also reference Dkt. 38 ¶ 219 as an allegation against Platter, characterizing the allegation as "Platter directed the DCS case aid to deny Aaron's visit with his children on 5 October 2018." (Doc. 57 at 14.) But paragraph 219 concerns actions only by Dr. Juliano and makes no mention of Platter. (Doc. 38 ¶ 219.)

- 9 -

"scattered" throughout a long complaint and are "verbose." The Court disagrees. This is a multi-year, multi-defendant, multi-claim case, justifying at least a modicum of complexity. And notably, the allegations were not so scattered and verbose that Platter could not locate and succinctly list them in less than two pages. (Doc. 41 at 3-4.) The FAC did not flout Rule 8's short and plain statement requirement.

Because the parties did not identify which allegations go to which claims, the Court merely concludes that to the extent the claims against Platter arise out of her in-court actions, they are dismissed. The claims against Platter may otherwise proceed.

### C. The State Defendants

#### 1. DCS and the State of Arizona

Neither DCS nor the State of Arizona are "persons" under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2022 WL 44676, at *8 (D. Ariz. Jan. 5, 2022) ("The Court finds DCS is not a 'person' under § 1983 because it is not a 'local governing body' under *Monell*. . . . DCS, however, is a state agency, not a municipality. *Monell* is therefore inapposite."). What's more, DCS is a non-jural entity and cannot be sued at all, even for state law claims. *Neely*, 2022 WL 44676, at *7. All claims against the State of Arizona and DCS (claims two, five, seven, nine, and thirteen) must be dismissed.

#### 2. Notice of Claim

State Defendants argue that the state law claims (claims fourteen through seventeen) must be dismissed because Plaintiffs did not comply with the notice of claim statute. "A notice of claim that satisfies A.R.S. § 12-821.01 is a necessary prerequisite" to suing a public entity or employee under state law. *Donovan v. Yavapai Cnty. Cmty. Coll. Dist.*, 423 P.3d 403, 405 (Ariz. Ct. App. 2018). To satisfy the statute, a plaintiff must "file claims with the person or persons authorized to accept service for the . . . public employee . . . within one hundred eight days after the cause of action accrues." A.R.S. § 12-821.01(A).

State Defendants Gattie, Diaz, Obika, Long, Kaplan, and Adams have attested that they were not served personally and never authorized anyone to accept service on their

behalf. Plaintiffs offer no evidence to the contrary. The Court finds that Plaintiffs did not comply with the notice of claim requirement and must dismiss the state law claims against Defendants Gattie, Diaz, Kelly, Obika, Long, Kaplan, and Adams.

Instead, Plaintiffs argue that because the minor Plaintiffs' claims accrue when they are 18, they need not comply with the notice of claim requirement. Taking this theory to its logical conclusion, minor Plaintiffs could litigate their claims even though their claims hadn't accrued—which makes no sense. *Cf. Howard v. Washington Elementary Sch. Dist. No. 6*, No. 1 CA-CV 20-0390, 2022 WL 363766, at *2 (Ariz. Ct. App. Feb. 8, 2022) (characterizing an argument similar to minor Plaintiffs' as "meritless"). Once the minor plaintiffs bring a claim, the claim has accrued, otherwise the minor plaintiffs would not have known to bring the suit. And once a claim has accrued, the notice of claim requirement applies. A.R.S. § 12-821.01(A). Consequently, minority tolling does not allow minor Plaintiffs to bypass the notice of claim requirement when suing public entities or employees.

### 3. Statute of Limitations and Federal Claims

State Defendants argue that the § 1983 claims (claims one through eleven, and thirteen) are time-barred. A two-year statute of limitations applies to § 1983 claims brought in Arizona. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The same accrual rule applies to § 1983 claims, regardless of the forum in which they are brought: "a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

The federal claims against State Defendants all raise allegations more than two years before the complaint was filed in November 12, 2021, with a few exceptions. Claims four through seven include allegations concerning C.W.'s 2020 tonsillectomy and S.W.'s 2020 admission to a mental health facility. Claim ten includes an allegation that Obika fabricated a report that ultimately was submitted to the court. Obika has no liability for this allegation, however, because Plaintiffs allege it was Platter, not Obika, who submitted the report to the court. Setting aside the allegations relating to the 2020 medical incidents, Plaintiffs

concede that the other allegations occurred more than two years before the complaint was filed, as they fail to address this argument in their response. Instead, Plaintiffs argue that both equitable estoppel and the continuing tort doctrine get around State Defendants' statute of limitations argument.

Equitable estoppel applies when a plaintiff, among other things, "identifies "specific promises, threats or inducements by the defendant that prevented the plaintiff from filing suit." *Nolde v. Frankie*, 964 P.2d 477, 481 (Ariz. 1998). Plaintiffs do not do so here and thus equitable estoppel does not prevent the statute of limitations from applying.

Under the continual tort doctrine "a tort claim based on a series of related wrongful acts is considered continuous, and *accrual* begins at the termination of the wrongdoing, rather than at the beginning." *Cruz v. City of Tucson*, 401 P.3d 1018, 1023 (Ariz. Ct. App. 2017). But this doctrine, which concerns accrual of a claim, is neither here nor there: federal law alone determines when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Thus, continual tort doctrine does not make the claims timely.

### 4. Supervisor liability

State Defendants argue that the allegations against supervisor Long[7], arise on a theory of respondeat superior and thus fail to state a claim under § 1983. Government officials cannot be held liable under § 1983 for actions of their subordinates merely on a theory of respondeat superior. *Iqbal*, 556 U.S. at 676. Instead, a plaintiff must allege that a supervisor "set[] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986). And to establish intent, "knowing acquiescence" is not enough. *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012)

The sole specific, factual allegations against Long are that he "approved" two progress reports that Plaintiffs allege contained false information or omitted material information. (Doc. 38 ¶¶ 167, 401.) Neither allegation suggests that Long knew or

---

[7] As argued by State Defendants, the same supervisor liability concern applies to Diaz, Kaplan, and Adams (all supervisors), but the Court notes that claims against Diaz, Kaplan, and Adams (one, ten through 11, and thirteen through seventeen) are barred by the statute of limitations and notice of claim requirement.

reasonably should have known that the report contained the false or omitted information or that the report's submission would cause a constitutional injury. As such, both allegations against Long arise under a respondeat superior theory and cannot ground liability under § 1983.

### 5. Alexander

State Defendants argue that Plaintiffs make no specific, non-conclusory allegations against Alexander. But, in the claims not barred by the statute of limitations or by failing to comply with the notice of claim statute (claims four and six), Alexander is put on notice of the alleged wrongful conduct. For example, in claims four and six, Plaintiffs allege that Alexander "[f]ail[ed[ to timely notify Aaron or secure his consent when S.W. was admitted to a mental health facility in April 2017." (*Id.* ¶¶ 341(d), 355(c).) Such an allegation places Alexander on notice of what actions she allegedly took and that Plaintiffs allege caused the constitutional injuries.

### 5. Qualified immunity

State Defendants argue that qualified immunity applies to claim one, an argument the Court declines to reach because the statute of limitations bars claim one as against the State Defendants. In State Defendants' reply, they extend this argument to all § 1983 claims against them, on the theory that all arise out of the same familial association claim. The Court does not consider this argument, as it was raised for the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

**IV. Conclusion**

The following claims remain. As against Platter, all claims predicated on allegations not related to her in-court actions. As against Kelly, Obika, and Alexander, claims four and six survive to the extent that they are predicated on the C.W.'s 2020 tonsillectomy and S.W.'s 2020 admission to a mental health facility.

**IT IS ORDERED** that Defendant Wright's motion to dismiss (Doc. 34) is **GRANTED**. Claims twelve and eighteen are dismissed against Wright.

**IT IS ORDERED** that Defendant Platter's motion to dismiss (Doc. 41) is **GRANTED IN PART**. To the extent the claims against Platter arise out of her in-court actions, they are dismissed. The motion is otherwise denied.

**IT IS ORDERED** that the State Defendant's motion to dismiss (Doc. 46) is **GRANTED IN PART**. Claims one through three, five, and seven through eighteen are dismissed as to Defendants State of Arizona, DCS, Gattie, Diaz, Kelly, Obika, Long, Alexander, Kaplan, and Adams. The motion is otherwise denied.

Dated this 28th day of February, 2023.

_____
Douglas L. Rayes
United States District Judge