Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Wostrel, *et al.*,<br><br>                    Plaintiffs<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>                    Defendants. | Case No.: CV-22-00312-PHX-DLR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Hon. Douglas L. Rayes) |

Plaintiffs, by and through their counsel, hereby respond to *State Defendants' Partial Motion to Dismiss Second Amended Complaint* (Doc. 115).[1]  Plaintiffs intend to voluntarily

---

[1] The current State Defendants are: Greg McKay, Michael Faust, Amber Gattie, Emelinda Diaz, Cheryl Kelly, Paulinius Obika, Jennifer Alexander, Nicole Kaplan, and Bryan Adams. Nicholas Long was formerly a State Defendant but was dismissed by the Court (Doc. 75). Plaintiffs inadvertently asserted claims against Long in their Second Amended Complaint (Doc. 95) but later filed a Rule 41(a) Notice of Voluntarily Dismissal of the claims against Long (Doc. 110), along with a proposed order (Doc. 110-1). The Court has not yet entered an order of dismissal as to Long pursuant to Plaintiffs' Notice.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

dismiss former Department of Child Safety ("DCS") Director Defendant Gregory McKay. The notice of voluntary dismissal, pursuant to Fed.R.Civ.P. 41(a), and proposed order will be filed promptly. The following Memorandum of Points and Authority is provided as grounds for Plaintiffs' Response in Opposition to State Defendants' Partial Motion to Dismiss Second Amended Complaint.

## **MEMORANDUM OF POINTS AND AUTHORITY**

### I.   **INTRODUCTION**

Plaintiff Aaron Wostrel ("Father") is the father of Plaintiffs S.W., B.W., and C.W. (collectively "Minor Plaintiffs"). Second Amended Complaint ("SAC") (Doc. 95) ¶ 27. S.W. was born in 2007; B.W. and C.W. are twins, born in 2011. *Id.* ¶¶ 30, 31. The events giving rise to the Plaintiffs' claims occurred in three states (Arizona, Wyoming, and Colorado) over a period of three years, and involved numerous courts (Arizona Superior Court, Arizona Court of Appeals, Arizona Supreme Court, and Family Courts in Wyoming and Colorado). Plaintiffs assert the following 42 U.S.C. § 1983 claims against State Defendants:  **Claim 1** (Freedom of Association/Unlawful Seizure) against Gattie and Diaz; **Claim 2** (Due Process/placing Minor Plaintiffs in an abusive home) against Kelly, Obika, and Alexander; **Claim 3** (Due Process/medical decisions) against Kelly, Alexander, and Obika; **Claim 4** (Due Process/medical treatments) against Kelly, Alexander, and Obika; **Claim 5** (Due Process/ educational decisions) against Kelly, Alexander, and Obika; **Claim 6** (Due Process/ judicial deception) against Kelly, Kaplan, Adams, and Obika; **Claim 7** (Due Process/reasonable efforts to reunite family) against Gattie, Diaz, Kelly, Obika, Alexander, Kaplan, and Adams; and **Claim 8** (malicious prosecution) against Kelly.[2]

The following state law claims are asserted against the State Defendants:  **Claim 9** (gross negligence/ reasonable efforts to reunite family) against Kelly; **Claim 10** (gross negligence/duty to protect the legal rights of Minor Plaintiffs) against Kelly; **Claim 11**

---

[2] Defendant Platter, who is not a State Defendant, is also named as a defendant in Claims 3-7 and 12.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

(negligent hiring/ training/ supervision) against McKay and Faust; **Claim 12** (intentional infliction of emotional distress to Minor Plaintiffs) against Kelly.

     **First**, State Defendants move to dismiss all claims against DCS supervisors Diaz, Kaplan, and Adams claiming (i) *respondeat superior* claims do not exist under § 1983, (ii) Plaintiffs have not stated a claim against them, and (iii) they should be dismissed for the same reason as former State Defendant Long.  *See* Mot. at 5:5-25.

     **Second**, as to former DCS Director McKay, as stated above, Plaintiffs will voluntarily dismiss McKay and therefore will not address State Defendants' arguments regarding McKay as a voluntary dismissal renders them moot.

     **Third**, as to Claim 7 as it pertains to Plaintiff Aaron Wostrel, the Court partially dismissed his claim against Platter for her in-court actions but did not dismiss her out-of-court actions, so his Claim 7 should not be dismissed. *See* (Doc. 75 at 14:1-3).

## II.   FACTUAL BACKGROUND

     Aaron, Sheila (Minor Plaintiffs' biological mother), and Minor Plaintiffs resided in Wyoming until 2015. SAC ¶ 32.  While in Wyoming, a court granted Sheila sole legal and primary physical custody of the Minor Plaintiffs, despite her history of substance abuse; Aaron was granted unrestricted custody.  *Id.* ¶¶ 33, 48, 49. Sheila later moved to Arizona in 2015 with the Minor Plaintiffs and Aaron moved to Colorado. *Id.* ¶¶ 34, 65. Aaron visited the Minor Plaintiffs in December 2015 and continued to have contact with them via telephone until June 2016, when Sheila changed her phone number without giving Aaron the new number. *Id.* ¶ 35. With the consent and approval of State Defendant Diaz, DCS removed Minor Plaintiffs from Sheila's care and custody in January 2017, after the Phoenix Police found S.W. home alone while executing a search warrant in the house Shelia shared with her boyfriend. *Id.* ¶¶ 37, 38, 56, 57. State Defendant Diaz directed the preparation of, signed, and filed a report in the Maricopa County Superior Court, juvenile division titled, *Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing*. No supervisor, agent, or employee of DCS made any effort to contact Aaron to notify him of the seizure of the Minor Plaintiffs from Sheila's custody.  SAC ¶ 63. When

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3

Aaron became aware of the seizure, he tried to contact DCS but none of his phone calls or emails were ever returned or received a response. *Id.* ¶ 84. Around the same time, State Defendant Diaz petitioned the juvenile court for custody of the Minor Plaintiffs to the exclusion and depravation of Aaron's constitutional parental and custodial rights. At the time of the DCS seizure of Minor Plaintiffs, there was no legal basis for DCS to violate Aaron's constitutional right to custody of his children or for failing to comply with the lawful custody order of the Wyoming court. *Id.* ¶ 8. After taking custody, DCS placed the Minor Plaintiffs with Sheila's father and his girlfriend, Defendants Wayne Lay and Jodi Lay, where they remained until April 14, 2020. *Id.* ¶¶ 62, 269, 277, 278, 279.

Between 2017 and 2020, two dependency trials occurred in juvenile court in Maricopa County wherein State Defendants sought findings of abuse and neglect against Aaron based on false and wrongful accusations of abandoning and neglecting his children. State Defendants made these accusations even though Aaron consistently (i) expressed his desire to have his children returned to him, (ii) complied with all court orders, and (iii) paid child support throughout this three-year-nightmare. *Id.* ¶¶ 64, 65, 71, 79, 123, 141, 146; *see also Aaron W. v. Dept. Child Safety*, ("*Aaron II*"), 2019 WL 4695887, at *5, ¶ 9 (Ariz. App. Sept. 26, 2019). Also, during this time, Shelia was sentenced to ten years in prison for armed robbery (on April 20, 2018). SAC ¶ 190.

### A.   First Dependency Trial (2017-2018)

In February 2017, DCS petitioned for dependency against Aaron and alleged, "without attempting to contact [Aaron]," that he had "neglect[ed] the children by abandoning them." *Id.* ¶ 64, quoting *Aaron II*, 2019 WL 4695887. On February 8, 2017, Aaron learned from Walter Lay that the Minor Plaintiffs were in his care. *Id.* ¶ 64. Aaron immediately contacted DCS stating that he was living in Colorado and was ready, willing, and able to bring Minor Plaintiffs home. *Id.* ¶¶ 66, 65, 71. At this point, Shelia had already informed DCS that Aaron had unrestricted custody of Minor Plaintiffs by order of a Wyoming court. *Id.* ¶ 48. Still, State Defendant Gattie told Aaron he could not take his

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

children home. *Id*. ¶ 72. No court of competent jurisdiction had granted DCS custody of the Minor Plaintiffs at this time. *Id*.

### 1. A trial date is set and DCS requests an ICPC for Colorado

On February 9, 2017, Aaron appeared telephonically at a preliminary hearing where DCS stated, with no legal basis, that it would "submit a request through the Interstate Compact on the Placement of Children ('ICPC') for *possible placement* with [Aaron]." *Id*. ¶¶ 73, 74. Minor Plaintiffs still had not been found dependent by any court. *Id*. ¶ 77. An ICPC request is used for monitoring the placement of *dependent* children, not for placing children *with their own parent*. *Id*. ¶¶ 75, 76, 81. A contested dependency trial was set for May 26, 2017. *Id*. ¶¶ 114-117.

In the time between the preliminary hearing and the contested dependency trial, DCS continued to ignore and violate Aaron's constitutional parental rights, as follows: (1) State Defendant Kelly told Aaron that he needed to submit to drug testing, a background check, and the ICPC home study evaluation before moving Minor Plaintiffs into his care; (2) Aaron's video calls with his children were unlawfully restricted by DCS; (3) DCS did not inform Aaron that S.W. was hospitalized for suicidal ideation; and (4) DCS did not seek Aaron's consent for S.W.'s hospitalization. *Id*. ¶¶ 87-102, 105-107.

### 2. DCS dismisses the first dependency on May 17, 2017

As soon as Aaron learned S.W. was hospitalized for suicidal ideation, he drove from Colorado to Phoenix to visit with her. *Id*. ¶ 107. After this visit, State Defendant Kelly correctly determined that DCS had no grounds for a dependency as to Aaron. *Id*. ¶ 110. On May 17, 2017, DCS moved the Court to "relieve [DCS] … from further responsibility in this case effective May 26, 2017, when [Aaron was to] appear[] in person to take custody of the children." *Id*.

### 3. The guardian ad litem (Kirsten Wright) objects to the dismissal

Aaron appeared at the May 26, 2017, hearing expecting to leave with Minor Plaintiffs and finally bring them home. *Id*. ¶ 114. However, Ms. Wright objected to DCS's

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

dismissal of the dependency petition, and the juvenile court *sua sponte* substituted Wright as the petitioner. *Id.* ¶¶ 115, 117-119. Wright then filed an amended dependency petition on June 2, 2017, again alleging that Aaron neglected and abandoned Minor Plaintiffs. *Id.* ¶¶ 121-122. The juvenile court ordered a psychological evaluation and parenting classes for Aaron. *Id.* ¶ 120.

### 4. Colorado approves the ICPC for Aaron, Aaron completes all court ordered services, and still, Minor Plaintiffs are found dependent

On June 14, 2017, Colorado approved the ICPC, with the recommendation that Aaron's children be placed with him, conditioned on a bonding assessment. *Id.* ¶¶ 123, 128-133. Colorado sent their approval to DCS. *Id.* ¶ 123. However, DCS failed to disclose the approved ICPC report to any party or to the Court. *Id.* ¶ 130-131.

By the August 2, 2017 hearing date, Aaron had completed all of the juvenile court ordered services, including the ICPC and parenting classes. *Id.* ¶¶ 126, 141, 146. In addition, Aaron completed a psychological evaluation at the Veterans Administration Hospital because DCS had failed to provide him with a service provider; no issues were reported by the evaluator. *Id.* ¶¶ 144-145. However, at the August 2nd hearing, State Defendant Kelly falsely told the juvenile court that the ICPC process was not yet complete. *Id.* ¶ 131-132. The juvenile court found the children dependent as to Aaron and held that the ICPC must be completed before Aaron could take custody of Minor Plaintiffs. *Id.* ¶¶ 147, 149.

### 5. Aaron appeals

In January 2018, the Arizona Court of Appeals vacated the dependency as to Aaron and remanded the case for a new trial. *Id.* ¶¶ 150, 151. Shortly thereafter, Defendant Platter was assigned as State's Advocate. *Id.* ¶ 161. Platter reviewed the entirety of the DCS case file, conferred with DCS employees and agents (*i.e.*, Gattie, Diaz, Obika, Alexander, Kaplan, and Adams), and began to advise, direct, and coordinate DCS's handling of the Wostrel family matter. *Id.* ¶¶ 21, 161. Platter also acted as the decisionmaker regarding

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

service providers, visitations, and what information would be provided to Aaron. *Id*. ¶ 161-162.

In June 2018, DCS finally scheduled the psychological evaluation for Aaron that the juvenile court had ordered over a year prior with Dr. David B. Juliano. *Id*. ¶ 174. Dr. Juliano submitted his report to DCS and spoke to Platter three days after the assessment, but DCS did not disclose the report to Aaron or his attorney. *Id*. ¶ 211.

In the Fall of 2018, upon information and belief, and likely at the direction of Platter, DCS scheduled a court-ordered bonding assessment with a provider in Arizona at a time Aaron was not available. *Id*. ¶ 179. When informed that Aaron was not available on the date unilaterally scheduled by DCS, Platter falsely stated to Aaron's counsel that, "[t]he Court's directive was to get appointments scheduled as soon as possible and not to just wait for when [Aaron] was in town so that has been done." *Id*. ¶ 182. When Aaron's counsel inquired as to whether DCS would pay for Aaron to make the special trip to Arizona for the assessment, Platter responded, "No and as the Court indicated he wouldn't order that." *Id*. ¶ 183.

On October 5, 2018, a DCS employee denied Aaron a court-ordered visitation with Minor Plaintiffs. *Id*. ¶ 186. Upon information and belief, Platter knew and approved of, if not directed, the denial of this visitation. *Id*.

**B.    Second Dependency Trial (2018-2020)**

On the first day of the second dependency trial, October 31, 2018, Platter led an esoteric, semantics-based argument on whether the juvenile court had to follow the Arizona Court of Appeals' holding. *Id*. ¶¶ 189, 195. Dr. Juliano, the DCS provider who finally performed the psychological evaluation in June 2018, testified that Platter spoke to him only three days after Aaron's assessment and that "this process has been so distorted and contorted that I really don't see myself as a value." *Id*. ¶ 212. During his testimony, when confronted with the favorable information about Aaron which he had not heard before, Dr. Juliano stated that if it was true, "that would suggest that there's probably less of a serious mental health issue than what most people were hypothesizing." *Id*. ¶¶ 213-214.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

On the second day of the second dependency trial, November 1, 2018, DCS, through Platter, finally disclosed the Colorado ICPC that the State had in its possession *since June 2017*. *Id.* ¶ 215. At the end of this trial, on January 23, 2019, the juvenile court found the Minor Plaintiffs dependent; Aaron again appealed. *Id.* ¶¶ 219-220.

On March 27, 2019, DCS finally completed the court-ordered bonding/best-interest assessment which had been ordered over six months prior. *Id.* ¶ 222. Dr. Bennett, who performed the assessment, determined that it was in the best interest of C.W. and B.W. to return to Aaron, and that S.W. could return with therapeutic intervention. *Id.* ¶¶ 225-227, 234. However, Platter and DCS failed to attach Dr. Bennett's report in their April 4, 2019, progress report they filed the juvenile court. *Id.* ¶ 228.

Several months after Colorado completed its ICPC, Aaron moved to Wyoming. *Id.* ¶ 230. On April 4, 2019, Wyoming completed an ICPC and approved of Minor Plaintiffs placement with Aaron. *Id.* ¶¶ 231, 233. Once again, Platter and DCS failed to disclose the ICPC, this time Wyoming's, to the parties or the juvenile court. *Id.* ¶ 234. Platter also failed to mention the approved Wyoming ICPC at a report and review hearing on April 5, 2019, and at a status conference on April 12, 2019. *Id.* ¶ 236.

On August 19, 2019, Wyoming contacted State Defendant Obika, asking him if DCS wanted a six-month extension on the ICPC. *Id.* ¶ 238. Obika, likely at the direction of Platter, failed to respond and the Wyoming ICPC expired. *Id.* at ¶ 240. In late August 2019, Platter and DCS finally disclosed Wyoming's ICPC, but they did not attach a copy of the approval to the progress report filed with the juvenile court. *Id.* ¶ 239.

1. **The Arizona Court of Appeals vacates the dependency finding a second time and the Arizona Supreme Court denies the State's Petition for Review.**

On September 26, 2019, the Arizona Court of Appeals vacated the second dependency findings holding that "insufficient evidence" supported the juvenile court's dependency order and that DCS "failed to prove that the children lack a parent willing and able to provide them with proper and effective parental care and control." *Id.* ¶ 241. After

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

the Court of Appeals' decision, DCS, through and at the direction of Platter, petitioned the Arizona Supreme Court to review the decision. *Id.* ¶ 242. On March 5, 2020, this petition for review was summarily denied. *Id.*

On March 23, 2020, the Wyoming Family Court found that it had continued, exclusive jurisdiction over the Wostrel children under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). *Id.* ¶ 247. The Wyoming Court awarded Aaron sole temporary legal custody of Minor Plaintiffs. *Id.* ¶ 250. When Platter was informed of the Wyoming Court's lawful and binding order, she stated "[t]he department will absolutely not be complying with the invalid order." *Id.* ¶ 251. At Platter's direction, DCS agents did not obey the order and failed to return Minor Plaintiffs to Aaron. *Id.* ¶ 252.

### 2.   DCS continues to prosecute even after the Court of Appeals orders dismissal of the dependency petition

On March 23, 2020, the Court of Appeals issued a mandate, ordering the juvenile court to comply with its decision to dismiss the second dependency petition. *Id.* ¶ 253.

On March 24, 2020, the juvenile court held a hearing at which Platter directed Obika to create false "notes" concerning events which purportedly occurred during Aaron's visits with his children in the six months prior. *Id.* ¶¶ 256, 263. Obika's description of the events in his created "notes" are contradicted by video and witness testimony. *Id.* ¶ 264. At the hearing, the juvenile court dismissed the prior dependency petition and immediately allowed Wright, the guardian *ad litem*, to file a new dependency petition. *Id.* ¶¶ 256, 262. Wright gave as her reason, "[c]ounsel (*i.e.*, Platter) believes that the children are at imminent risk of harm if the children are returned to Aaron Wostrel." *Id.* ¶ 258.

On March 25, 2020, the juvenile court held a UCCJEA conference with the Wyoming Court and the parties wherein the Wyoming Court made it clear that it was not relinquishing its exclusive, continuing jurisdiction over the Wostrel children. *Id.* ¶¶ 265-266. Nevertheless, the Arizona juvenile court found it had "emergency" jurisdiction and that it could conduct yet *another* full dependency trial. *Id.* ¶ 267.

On March 26, 2020, Aaron filed a special action petition with the Court of Appeals. *Id.* ¶ 268.

On April 3, 2020, S.W. ran away from the Lay's home and the next day she was admitted to a mental health facility. *Id.* ¶¶ 268, 271. Both Platter and Obika knew S.W. ran away and was hospitalized, but Aaron was not informed. *Id.* ¶ 272. Upon information and belief, Platter directed Obika to not inform Aaron. *Id.* ¶¶ 270, 273.

After more than three years of agony, on April 14, 2020, the juvenile court finally dismissed the dependency, under the Court of Appeals, mandate, and Minor Plaintiffs were finally able to reunite with their father.  *Id.* ¶¶ 276-280.

## III.   <u>APPLICABLE LAW</u>

Rule 12(b)(6), Fed. R. Civ. P., provides that a party can move the court to dismiss a complaint if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted.). "A claim has *facial plausibility* when the plaintiff pleads factual content that allows the Court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The probability of success at trail should not be considered, as "a well-pleaded complaint may proceed even if it appears 'that recovery is very remote and unlikely.'" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts pled are assumed to be true, as "Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* Furthermore, Ninth Circuit courts have held that "[i]n deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020) (internal citation omitted).  Thus, a motion to dismiss should be granted only if there is no cognizable factual or legal basis for the claim.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   **IV.   ANALYSIS**

2
3   **A.    The § 1983 Claims Against State Defendant Supervisors Must Not Be Dismissed for Failure To State a Claim**

4   State Defendants move to dismiss § 1983 claims (Claims 1, 6, and 7) against DCS

5   supervisors Diaz, Kaplan, and Adams claiming that they should be dismissed for the same

6   reason as those claims were dismissed as to State Defendant Long. *See* Mot. at 5:4-7.

7   Contrary to State Defendant's argument, however, Plaintiffs have pled sufficient facts that

8   supervisors Diaz, Kaplan, and Adams did more than just rubber stamp reports.

9   State Defendants fail to provide in their restatement of the current law that "[a]

10  supervisor *can be liable in his individual capacity* for his own culpable *action or inaction*

11  *in the training, supervision, or control of his subordinates*; for his *acquiescence in the*

12  *constitutional deprivation*; or for *conduct that showed a reckless or callous indifference to*

13  *the rights of others*." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9ᵗʰ Cir. 2018) (emphasis

14  added, internal citations and quotations omitted).  Furthermore, "the claim that a supervisor

15  official knew of the unconstitutional conditions and culpable actions of his subordinates

16  *but failed to act* amounts to acquiescence in the unconstitutional conduct of his

17  subordinates and is sufficient to state a claim of supervisory liability." *Id.* Thus, a

18  supervisory official can be liable for a § 1983 violation "[e]ven if [they are] not directly

19  involved in the allegedly unconstitutional conduct." *Id.* Furthermore, the Ninth Circuit held

20  "[a]lthough '[g]overnment officials may not be held liable for the unconstitutional conduct

21  of their subordinates under a theory of *respondeat superior*,' supervisory officials may be

22  liable on the basis of their own acts or omission," including supervising "with deliberate

23  indifference toward the possibility that deficient performance of the task may contribute to

24  a civil rights deprivation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9ᵗʰ Cir. 2011) (quoting

25  *Aschroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. at 1948) (some internal quotation marks

26  omitted).

27  State Defendants assert that *Larez* stands for the proposition that a supervisor can

28  only be liable under § 1983 if he "set in motion a series of acts" or if he "knowingly refused

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

to terminate a series of acts by others" which then resulted in the constitutional violation. *See* Mot. at 6:1-3, quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). This is an inexcusable misstatement of the law. In *Larez*, the court held that a supervisor *could* be held liable *if* he set in motion, or knew but did not stop, the wrongful acts. That court did not say that was the *only* instance in which a supervisor was subject to liability. Further, the *Larez* opinion is prior in time to the law Plaintiffs have correctly summarized above – i.e., the holdings in *Keates* and *Starr* that supervisors are liable under § 1983 for acquiescence to the constitutional violations of their subordinates – and does not actually differ or vary from *Keates* and *Starr*. The full quote from *Larez*, which State Defendants deliberately took out of context, is below:

> The district court correctly instructed <u>the jury that it could find Chief Gates liable in his individual capacity if he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.</u> Supervisor liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his *acquiescence in the constitutional deprivations for which the complaint is made*; or for conduct that showed a reckless or callous indifference to the rights of others.

*Larez*, 946 F. at 646 (internal citations and quotations omitted, emphasis added). Importantly, *Larez* was an appeal of jury instructions following a trial; it was not a case at the pleading stage. The legal standard applied in *Larez* is not relevant here. Here, the allegations in the SAC must be taken as true.

Nevertheless, State Defendants again use the parsed language from *Larez* and combine it with an out-of-context misstatement of the law from a different case to reach the erroneous conclusion that Plaintiffs claims must plead specific intent of a supervisor. *See* Mot. 6:4-6, citing *OSU Student All. v. Ray*, 669 F.3d 1053, 1071 (9th Cir. 2021). State Defendants claim OSU stands for the proposition that "for claims requiring specific intent, it is not enough to plead knowing acquiesce." *Id.* While this may be true in isolation, it has

no bearing or application here. There is no requirement under the law for Plaintiffs here to plead specific intent. Section 1983 claims do not require specific intent. In fact, a close reading of *OSU* shows that the law supports the exact opposite position from what the State Defendants argue. In *OSU*, the court held that § 1983 "*contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right*; therefore, the requisite mental state for individual liability will change with the constitutional provision at issue." *Id.* at 1071 (internal citation omitted, emphasis added). Furthermore, in *OSU*, where a freedom of speech violation was addressed, the court found that pleading that the "immediate supervisor knew about the subordinate violating another's federal constitutional right to free speech," was sufficient to survive a motion to dismiss and no pleading of specific intent was required. *Id.* at 1075. Finally, the court there held that "*only in limited situations has the Supreme Court found constitutional torts to require specific intent*. We know of three examples: (1) due process claims for injuries caused by a high-speed chase; (2) Eighth Amendment claims for injuries suffered during the response to a prison disturbance; and (3) invidious discrimination under the Equal Protection Clause and the First Amendment Free Exercise Clause." *Id*. at 1074 (internal citations quotations omitted, emphasis added). Simply put, State Defendants misconstrue *Larza*, and it is a precedent that supports Plaintiffs' claims.

Here, State Defendant supervisors violated Plaintiffs' constitutional rights. *First*, Plaintiffs specifically allege that State Defendant Diaz consented to and approved the initial removal of the children. SAC ¶ 56.  By DCS policy, the removal of children from their parents cannot occur without the express, knowing, and informed approval of a supervisor. State Defendant Diaz also directed the drafting of, signed, and filed the *Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing*, a report required by Arizona law to be filed in every dependency proceeding. She consulted with Platter and coordinated the handling of the Wostrel family matter. *Id.* ¶ 161. She was also actively involved in the unlawful seizure of the Minor Plaintiffs.  *Id.* ¶¶ 288, 297-299,

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

301-303. Diaz was personally involved in the Plaintiffs' constitutional violations and otherwise failed to act when her subordinates violated Plaintiffs' constitutional rights.

*Second*, State Defendant Kaplan did more than approve a report. Kaplan personally conferred with Platter regarding the coordination of DCS' handling of the Wostrel family. *Id*. ¶ 161. Kaplan knew Colorado had approved the ICPC for placement of the Minor Plaintiffs with Aaron but failed to report or ensure that information was reported to the juvenile court, which shows a reckless disregard for the truth. *Id.* ¶¶ 343-344, 358. DCS supervisors are responsible for ensuring the implementation of a case plan and that that progress is made toward the achievement of that case plan. Here, the case plan was family reunification, which is accomplished through regular visits between children and their parents, among other things. Kaplan failed to exercise her supervisory duties in that regard. For instance, in her supervisory role, she failed to ensure scheduled visitation between Aaron and Minor Plaintiffs, failed to provide the Foster Care Review Board with the required reports, failed to schedule the court-ordered bonding and best interest assessment and psychological evaluation, and failed to inform Aaron about scheduled CFT and other meetings. *Id.* ¶ 367.

*Third*, State Defendant Adams was also more involved than simply approving a report, as claimed by State Defendants. Adams also personally conferred with Platter regarding the coordination of DCS' handling of the Wostrel family. *Id.* ¶ 161. Adams knew Colorado had approved the ICPC for placement of the Minor Plaintiffs with Aaron but failed to report or ensure that information was reported to the juvenile court, thus showing a reckless disregard for the truth. *Id.* ¶¶ 350, 358. As noted above, DCS supervisors are responsible for ensuring the implementation of a case plan and that progress is made toward the achievement of that case plan. Here, the case plan was family reunification, which is accomplished through regular visits between children and their parents, among other things. Adams failed to exercise his supervisory duties in that regard. For instance, in his supervisory role, he failed to ensure scheduled visitation between Aaron and Minor Plaintiffs, failed to provide the Foster Care Review Board with the required reports, failed

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

to schedule the court-ordered bonding and best interest assessment and psychological evaluation, and failed to inform Aaron about scheduled CFT and other meetings. *Id.* ¶ 367.

State Defendant's argument here must be wholly disregarded and the motion denied.

### B.   Claim 7 as to Aaron Should Not Be Dismissed

State Defendants assert that all of Aaron's federal claims against State Defendants were dismissed as time-barred except for his claims regarding medical decisions and treatment. *See* Mot. at 8:10-11. However, Aaron's Claim 7 (formerly Claim 11 in the FAC) against State Defendants was dismissed based on statute of limitations ground but his claim against Defendant Platter for her out-of-court actions survived. *See* (Doc. 75 at 13:22-14:3). Therefore, Aaron's Claim 7 against Platter should not be dismissed.

## V.   CONCLUSION

State Defendants' motion should be denied in its entirety. Plaintiffs have pled sufficient facts supporting plausible claims against the State Defendant supervisors Diaz, Kaplan, and Adams. Those claims are entitled at this point to be put to the test of robust discovery, including the depositions of those State Defendants, summary judgment, and ultimately, trial to a jury. Aaron's Claim 7 must remain, at least as to Defendant Platter. Finally, Plaintiffs will voluntarily dismiss their claims against State Defendant McKay.

WHEREFORE, Plaintiffs request that this Court deny State Defendants' Partial Motion to Dismiss Second Amended Complaint in its entirety.

**RESPECTFULLY SUBMITTED** this 17th day of January 2024.

**MILLS + WOODS LAW, PLLC**

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**GILLESPIE, SHIELDS & TAYLOR**

By    /s/ Jenny D. Jansch

DeeAn Gillespie Strub
Jenny D. Jansch
7319 North 16th Street
Phoenix, Arizona 85020

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

*/s/  Michelle Feltes*