Kris Mayes
Attorney General

Michael R. Niederbaumer (#031931)
Stephanie Elliott (#030872)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-4860 (M Niederbaumer)
Fax: (602) 542-3393
DefensePhx@azag.gov
Michael.Niederbaumer@azag.gov
Stephanie.Elliott@azag.gov
Thomas.Young@azag.gov

*Attorneys for State Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Aaron Wostrel, et al.<br><br>Plaintiffs,<br><br>v.<br><br>State of Arizona, et al.,<br><br>Defendants. | Case No. CV-22-00312-PHX-DLR<br><br>**STATE DEFENDANTS' RULE 702 MOTION TO EXCLUDE PLAINTIFFS' EXPERT TIMOTHY TURNER** |

Defendants Michael Faust, Amber Gattie, Cheryl Kelly, Paulinus Obika, and Jennifer Alexander (together as "State Defendants"), move to preclude the opinions and testimony of Plaintiffs' designated standard-of-care expert, Timothy Turner ("Turner"), pursuant to Fed. R. Evid. 702, Fed. R. Civ. P. 26(a)(2)(B), 26(e), and 37(c)(1). Turner's opinions, as set out in his report (the "Report," attached as Exhibit A) and at his deposition, should be precluded because Turner (1) admittedly lacks the qualifications to opine on whether Plaintiffs' due process rights were violated; (2) offers legal conclusions that invade the province of the jury; (3) offered opinions for the first time at his deposition that were never disclosed in the Report; (4) opines on the State Defendants' hiring, training, and supervision without any factual basis; (5) directs opinions at DCS and other non-parties whose conduct is not at issue; and (6) measures Gattie's conduct

against a Governor's Office memorandum and a 2019 policy manual that do not supply a reliable standard. Turner's Report, opinions, and testimony are therefore inadmissible for multiple independent reasons. This Motion is supported by the Memorandum of Points and Authorities, the exhibits attached hereto, and the Court's entire record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. SUMMARY OF REMAINING CLAIMS

The Second Amended Complaint ("SAC"), filed June 24, 2023, is the operative complaint. (Doc. 95.) Twelve claims remain against State Defendants in varying form: (1) 42 U.S.C. § 1983 – Due Process/Seizure/Wrongful Removal against Gattie (*Id.* at ¶¶ 281-304); (2) 42 U.S.C. § 1983 – Due Process/Placement in an abusive home against Kelly, Obika, and Alexander (*Id.* at ¶¶ 305-316); (3) 42 U.S.C. § 1983 – Due Process/Medical decisions against Kelly, Obika, and Alexander (*Id.* at ¶¶ 317-322); (4) 42 U.S.C. § 1983 – Due Process/Right to have Parent Present at Medical Procedure against Kelly, Obika, and Alexander (*Id.* at ¶¶ 323-328); (5) 42 U.S.C. § 1983 – Due Process/Educational Decisions against Kelly, Obika, and Alexander (*Id.* at ¶¶ 329-333); (6) 42 U.S.C. § 1983 – Due Process/Judicial Deception against Kelly (*Id.* at ¶¶ 334-359); (7) 42 U.S.C. § 1983 – Due Process/Reasonable Efforts at Reunification against Gattie, Kelly, Obika, and Alexander (*Id.* at ¶¶ 360-369); (8) 42 U.S.C. § 1983 – Due Process/Malicious Prosecution against Kelly (*Id.* at ¶¶ 370-377); (9) Gross Negligence/Reasonable Efforts at Reunification against Kelly (*Id.* at ¶¶ 378-384); (10) Gross Negligence/Failure to Protect Minors' Rights against Kelly (*Id.* at ¶¶ 385-390); (11) Negligent Hiring, Training, and Supervision against Faust (*Id.* at ¶¶ 391-396); and (12) Intentional Infliction of Emotional Distress against Kelly (*Id.* at ¶¶ 397-401).

## II. LEGAL STANDARD

The district court is tasked with ensuring that any expert testimony is relevant and reliable. Fed. R. Evid. 401, 702. An expert witness may testify in the form of opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based

on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. The trial court acts like a gatekeeper to ensure that any and all expert testimony is not only relevant but reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). This "gatekeeping" obligation is critical "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002) (*overruled on other grounds by U.S. v. Bacon*, 979 F.3d 766 (9th Cir. 2020)). "[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152.

It is the burden of the party proffering the expert testimony to establish admissibility. *See Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996). Expert testimony that fails to meet all of these criteria should be excluded, even when the exclusion of expert testimony is the deciding factor in determining the outcome of the case. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1421 (9th Cir. 1998).

Although Fed. R. Evid. 704(a) permits expert opinions on the ultimate issue, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar*, 299 F.3d at 1066 n. 10) (emphasis in original); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Diaz*, 876 F.3d at 1197 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)) (emphasis in original).

Fed. R. Civ. P. 26(a)(2)(B)(i) requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." If

an expert's opinion changes, or the information upon which she relies changes, the party offering the expert must supplement the report. Fed. R. Civ. P. 26(e)(2). A party that fails to disclose or supplement "is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). This sanction is self-executing and automatic. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing the Advisory Notes to Rule 37); *see also Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021). "Courts have upheld the use of this sanction even when the litigant's entire cause of action or defense has been precluded." *Id.* (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)). The burden to show substantial justification or harmlessness is on the party facing the sanction. *Id.*

## III. LAW AND ARGUMENT

### A. Turner Admittedly Lacks the Qualifications to Opine on Whether Certain Acts or Omissions Violated Plaintiffs' Due Process Rights.

Turner's Report is rife with opinions that the State Defendants violated Plaintiffs' due process rights. In it, Turner: (1) opines that failing to invite Plaintiff Aaron Wostrel ("Wostrel") to the Team Decision Meeting ("TDM") violated due process (Report, p. 6); (2) opines that filing the dependency petition without contacting Wostrel violated due process (*id*. at 7); (3) supplies his own definition of due process (*id*. at 9-10); (4) states that the case "pertain[s] to due process violations" (*id*. at 10); (5) asserts a failure to provide due process (*id*. at 11); (6) catalogs alleged due process violations in Section E(2) (*id*. at 11-12); (7) treats the demand for supervised visitation as a due process violation (*id*. at 18); (8) treats the emergency removal the same way (*id*. at 20); (9) concludes that the children were unlawfully seized (id. at 23); (10) asserts that "illegal moves" were made (*id*.); (11) refers to various due process violations (*id*. at 24); (12) refers to unlawful seizures (*id*.); (13) asserts an inalienable right regarding the children's medical procedures (*id*.); (14) asserts due process rights regarding educational decisions (*id*.); and (15) describes drastic overreach by the government (*id*.). Turner has admitted that he is

not qualified to opine on these issues and has stated that he will not testify on them at trial.

An expert must be qualified by knowledge, skill, experience, training or education that relates to evidence or facts in the case. *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000). The question is task-specific: whether *this* expert has reliable expertise for *this* opinion, not whether he can be considered an expert generally. *See Kumho Tire Co.*, 526 U.S. at 156.

During his deposition, Turner admitted to being unqualified to opine as to whether Plaintiffs' due process rights were violated: (1) he is not a legal expert or lawyer (Deposition of Timothy Turner, July 24, 2026, relevant portions attached hereto as Exhibit B, at 22:16-18); (2) "I'm not a qualified expert on constitutional law" (*id*. at 23:1-2); (3) he is not a constitutional expert (*id*. at 26:4-7); (4) he cannot opine as to whether something violates the constitution (*id*. at 26:8-11); (5) he cannot opine as to whether failing to invite father to a TDM violated the Constitution (*id*. at 69:10-24); (6) "I'm not a legal scholar or expert" (*id*. at 72:25 – 73:1); (7) "I am not a constitutional expert" in reference to filing the dependency petition (*id*. at 119:9-23); (8) he is not a Constitutional scholar (*id*. at 120:12-18); (9) "I am not a constitutional lawyer. So all I do is look it up and read about it" then reaches "an educated guess, an educated conclusion" (*id*. at 129:5-14); (10) asked if he will offer any opinion at trial the State Defendants violated due process, "I will not be making those kind of opinions at trial" (*id*. at 129:17-21); (11) "I'm not a due process expert. I just read the due process clause and then used it in forming my opinion. But at trial . . . I will not be forming that opinion" (*id*. at 130:4-10); (12) he will not opine as to whether there were due process violations (*id*. at 133:25 – 134:4); and (13) he is not an attorney, not a legal expert, and will not testify to due process or constitutional violations (*id*. at 223:25 – 224:5). Turner is simply not qualified to opine as to alleged constitutional violations.

Turner has admitted that he lacks the qualifications to opine on due process or constitutional violations and has stated that he will not offer any such opinions at trial.

Accordingly, these opinions should be stricken from the Report and Turner should be precluded from testifying on due process and constitutional issues.

**B. Turner's Opinions Improperly Invade the Province of the Jury**

The Report includes bald legal conclusions which are inadmissible and left to the province of the jury. Turner uses the terms "due process violations," "violation of constitutional rights," "illegal moves," "unlawful seizure," "gross negligence," "negligence," "intentional infliction," and "reckless" throughout his report. (Report, pp. 6, 7, 9, 10, 11, 12, 13, 16, 18, 20, 23, and 24.)

Legal conclusions are not within the purview of an expert and are decided by the trier of fact. "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin.*, 523 F.3d at 1058 (citation omitted). "In other words, an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997). To permit an expert to opine as to the ultimate issue of law does not aid the jury in rendering a decision, but substitutes the expert's conclusion for the jury's decision. *Diaz*, 876 F.3d at 1197.

The SAC contains eight due process claims, two gross negligence claims, a negligence claim, and an intentional infliction of emotional distress claim. Turner's Report opines on the ultimate issue of law on each of these claims. This is impermissible. Accordingly, these opinions should be stricken from the Report and Turner should be precluded from offering said opinion at trial.

**C. Opinions First Elicited at Deposition are Barred**

Plaintiffs designated Turner as their standard-of-care expert, yet his Report never uses the phrase "standard of care" and never opines that any State Defendant fell below one. Turner offered a standard-of-care opinion for the first time at his deposition, in response to questioning by Plaintiffs' own counsel. That was not the only new opinion

Plaintiffs' counsel elicited. Turner also attributed to Kelly conduct that his Report attributes to Gattie, and he offered negligence opinions that appear nowhere in the Report.

"An expert's written report must contain, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them[]' . . . ." *Engilis v. Monsanto Company*, 151 F.4th 1040, 1051 (9th Cir. 2025) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). "The federal rules generally 'forbid[] the use of any information not properly disclosed.'" *Id.* (quoting *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025)). "[W]hen a party fails to provide information required by Rule 26, such party 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Key*, 129 F.4th at 1143 (quoting Fed. R. Civ. P. 37(c)(1)). The burden to show substantial justification or harmlessness is on the party attempting to use the information or witness. *Yeti*, 259 F.3d at 1106.

The Scheduling Order required "full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure." (Doc. 39, ¶ 5.) Plaintiffs disclosed Turner's Report on June 4, 2025, and never supplemented it. The Report does not contain the phrase "standard of care" and does not opine that any State Defendant's conduct fell below one. (*See generally* Report.) State Defendants deposed Turner on July 24, 2026, and he confirmed that he holds no opinions beyond those in the Report. (Ex. B at 28:13-19.)

Plaintiffs' counsel then used their own examination of Turner to add to the Report. Turner opined for the first time that anyone associated with the Arizona Department of Child Safety ("DCS") fell below the standard of care. (*Id*. at 257:16-22.) Counsel sought to recast Turner's due process "opinions" as standard-of-care opinions. (*Id*. at 275:2-8.) Counsel sought to correct perceived errors in the Report by having Turner substitute Kelly for Gattie in its "gross negligence" interrogatories. (*Id*. at 296:19 – 298:12; Report, pp. 12-13.) And counsel elicited negligence opinions that the Report does not contain.

(*Id*. at 298:14 – 301:19.) Because none of these opinions was disclosed in the Report, Rule 37(c)(1) bars them unless Plaintiffs prove that the failure to disclose was substantially justified or harmless. *Key*, 129 F.4th at 1143 (citing Fed. R. Civ. P. 37(c)(1)); *Yeti*, 259 F.3d at 1106. Plaintiffs can show neither.

Plaintiffs cannot show substantial justification. Nothing prevented Turner from including these opinions in his Report, and nothing prevented Plaintiffs from supplementing their disclosure in the more than thirteen months between the Report (June 4, 2025) and Turner's deposition (July 24, 2026). *See* Fed. R. Civ. P. 26(e)(2). Plaintiffs instead waited until the deposition itself and introduced the opinions through their own counsel's questions. No explanation for that delay is apparent.

Nor was the failure harmless. Rule 26(a)(2)(B) requires an expert's opinions and their bases to appear in the report, and deposition testimony cannot cure a report that omits them. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."). The deadline to disclose expert reports has long passed. When the new opinions surfaced, only two working days remained before the expert-deposition deadline (Doc. 195), and the Scheduling Order barred expert-discovery disputes after that deadline (Doc. 39, ¶ 6(c)). State Defendants therefore could not obtain and disclose a rebuttal report, could not discover the bases for the new opinions, and had no opportunity to prepare a cross-examination on opinions they heard for the first time that day. Allowing Turner to offer those opinions at trial would reward a last-minute disclosure that State Defendants had no chance to answer.

For the foregoing reasons, Turner's standard of care opinions, substitution of parties, and newly disclosed negligence opinions should be barred.

**D. Turner May Not Opine that State Defendants were Negligently Hired, Trained, or Supervised.**

Rule 702(b) requires that expert testimony be "based on sufficient facts or data." Turner's opinions about State Defendants' training, hiring, and supervision rest on no facts at all. Turner never received or reviewed the State Defendants' training files, the documents used for training, or their personnel files.

Turner opines that the State Defendants were not properly hired, trained or supervised (Report, p. 13) and were "not properly trained and supervised while they were employed by the agency." (*Id.* at 24.) However, his Report does not list training materials or personnel files as documents he reviewed. (*Id.* at 2-4.) During his deposition, Turner admitted that he never reviewed training files, training materials, or personnel files. (Ex. B, 200:8 – 201:7; 206:22-25). An opinion about the adequacy of training the expert has never seen, from an expert who does not know what training the employee actually received, is not based upon sufficient facts or data. Similarly, an opinion about the hiring and supervision of an employee from an expert who has never reviewed the employee's personnel file is not based upon facts or data. It is speculation, and Rule 702(b) does not permit it.

**E. Turner May Not Offer Opinions Directed at DCS or Other Non-Parties.**

Turner's Report is replete with opinions about the actions of DCS, Emelinda Diaz, and Nicholas Long; none of which are parties to this case. Those opinions do not fit any question the jury will decide and should be precluded.

Turner offers the following opinions: (1) "DCS could have readily obtained Mr. Wostrel's phone number" (Report, p. 6); (2) "DCS knew or should have known that maternal grandfather Walter Lay had failed to protect the children" (*id.* at 7); (3) "DCS filed the dependency petition" (*id.*); (4) "DCS appeared to align itself with Walter Lay" (*id.*); (5) "It is my professional opinion that DCS was rewarding Walter Lay and his second wife, Jodi Ostrom, for aligning with DCS and supplying the Department incorrect 'evidence' that Mr. Wostrel was neglecting and abandoning his daughters" (*id.*); (6) "DCS appeared to have worked tirelessly to prevent Mr. Wostrel from having custody of

his children" (*id.*); (7) "DCS entered false allegations against Mr. Wostrel" (*id.* at 8); (8) "DCS demanded" supervised contacts (*id.*); (9) "The apparent desired goal of the agency was to sever Mr. Wostrel's parental rights" (*id.*); (10) "DCS utterly and inexcusably failed in its duty" (*id.* at 11); (11) "DCS's repeated disregard for state and federal law" (*id.*); (12) unlawful seizure by DCS (*id.*); (13) DCS made medical appointments (*id.*); (14) "DCS was negligent" (*id.* at 12); (15) gross negligence by DCS (*id.*); (16) court had to compel "DCS to begin reunification services" (*id.*); (17) gross negligence by DCS (*id.*); (18) "complete lack of effort on the part of . . . supervisor Diaz" (*id.*); (19) abuse could have been prevented if "DCS performed a thorough investigation" (*id.* at 13); (20) gross negligence by DCS for failure to properly hire, train, and supervise (*id.*); (21) "DCS ignored the needs of the girls" (*id.*); (22) "incompetence of [] DCS to properly evaluate" (*id.*); (23) "DCS should not have placed" (*id.* at 13-14); (24) "the actions that [] DCS took" (*id.* at 21); (25) "Diaz [was] allowed to avoid the scrutiny of the Court" (*id.* at 23); (26) "DCS decided to make illegal moves" (*id.*); (27) "The Due Process violations by DCS" (*id.* at 24); (28) "deliberate actions by DCS" (*id.*); (29) "DCS had no right to prevent the father from knowing" (*id.*); (30) "drastic overreaches by . . . Diaz [] and Long" (*id.*); and (31) "The reckless and lawless behavior on the part of DCS" (*id.* at 25).

DCS, Emelinda Diaz, and Nicholas Long are no longer parties.[1] There are no questions concerning their actions that the jury will decide. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18); *see also* Fed. R. Evid. 401, 402, and 702(a). Accordingly, Turner's opinions on the actions of non-parties DCS, Emelinda Diaz, and Nicholas Long should be stricken from the Report and he should be barred from testifying about the same.

Federal Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." The non-parties' conduct is not at issue, so Turner's opinions that

[1] *See* Doc. 75 and Doc. 127.

they violated the Constitution or were grossly negligent or were negligent have little, if any, probative value. Those opinions would nonetheless carry an expert's imprimatur. Admitting them would confuse the issues surrounding the State Defendants' conduct and could mislead the jury into holding State Defendants liable for the actions of others.

### F. Turner's Opinion on Gattie's Conduct Rests on a Governor's-Office Memo and a 2019 Policy Manual That Do Not Supply a Reliable Standard

Turner's opinions that Gattie failed her duties and "shirked" her responsibilities both depend on measuring her conduct against two documents. (Report, pp. 14-15, 18-19, 22.) Neither can bear that weight. Fed. R. Evid. 702(b)-(d).

Turner did not review or use Gattie's job description in evaluating her performance. (Ex. B, at 160:24 – 161:2.) Rather, Turner used "a memorandum from the Governor's Office," that generally described "the basic requirements for an individual to be hired as a DCS caseworker." (Report, p. 14.) The Report describes the memo as "produced during Governor Janice Brewer's administration" and says "it adequately spells out the qualifications that were in place when Gattie was hired." (*Id.*) However, at deposition, Turner admitted that his knowledge of the memorandum was lacking. Turner did not know what year the memorandum was created, believing that it was sometime in 2013. (Ex. B, 160:11-18.) He admitted that he did not know if the memorandum was still in effect or if the requirements had ever changed. (*Id.* at 160:19-23, 161:8-19.) Yet he used the memorandum to evaluate Gattie's performance without knowing whether it applied. (*Id.* at 160:19-23, 161:8-13.) Under Rule 702(b)-(d), an opinion must reflect reliable principles and methods and apply them to the facts. An expert cannot rely on random memoranda that may or may not apply. Turner does not have an adequate basis to criticize Gattie's job performance.

The events began in 2017. (Ex. B, 31:16-18.) However, Turner reviewed the 2019 DCS Policy & Procedures Manual "[b]ecause I did not have access to the 2017 manual." (*Id.* at 31:19-23; Report, p. 2.) He assumed, without confirmation, that "revisions are pretty standard from year to year" and that the 2019 policies were "very, very similar."

(*Id*. at 31:21-23, 161:3-7.) Yet his Report asserts that the manual's Chapter 2, Section 6 was "in effect in 2017, with few changes up to today." (Report, p. 19.) He had no basis to make this determination. He had not seen the 2017 manual (Ex. B, 161:5-6), so he could not know what had changed.

The Court should preclude Turner from testifying that Gattie's conduct departed from the Governor's-Office memo, the 2019 manual, or any DCS policy, and from characterizing her conduct as "shirk[ing]" or failing in her duties.

## IV. CONCLUSION

Plaintiffs designated Turner as their standard-of-care expert, yet his Report never identifies a standard of care or opines that any State Defendant breached one. What the Report offers instead are constitutional and legal conclusions that Turner concedes he is unqualified to give and will not offer at trial; criticisms of DCS and other non-parties; hiring, training, and supervision opinions formed without reviewing a single training or personnel file; and criticisms of Gattie measured against a memorandum and a manual that Turner cannot show applied to her. The standard-of-care and negligence opinions that Plaintiffs' counsel elicited at deposition came more than thirteen months after the Report, were never disclosed under Rule 26(a)(2)(B), and may not be used at trial under Rule 37(c)(1). Plaintiffs bear the burden of showing that it is more likely than not that Turner's opinions satisfy Rule 702. They cannot carry it.

State Defendants therefore respectfully request that the Court exclude Turner's opinions and testimony in their entirety. In the alternative, State Defendants request an order precluding Turner from:

1. testifying that any State Defendant violated Plaintiffs' due process or other constitutional rights, or that any seizure, removal, placement, or other act was "unlawful" or "illegal" (Sections III.A and III.B);

2. characterizing any State Defendant's conduct as "negligent," "grossly negligent," "reckless," or "intentional," or otherwise offering legal conclusions (Section III.B);

3. offering any opinion not disclosed in his June 4, 2025 Report, including any opinion that a State Defendant fell below the standard of care, any opinion attributing to Kelly conduct that the Report attributes to Gattie, and the negligence opinions first elicited at his July 24, 2026 deposition (Section III.C);

4. testifying that any State Defendant was negligently hired, trained, or supervised (Section III.D);

5. offering opinions about the conduct of DCS, Emelinda Diaz, Nicholas Long, or any other non-party (Section III.E); and

6. testifying that Gattie's conduct departed from the Governor's Office memorandum or the 2019 DCS Policy and Procedures Manual, or that she "shirked" or failed in her duties (Section III.F).

DATED this 21st day of October, 2026

Kris Mayes
Attorney General

*s/Michael R. Niederbaumer*
Michael R. Niederbaumer
Stephanie Elliott
Assistant Attorneys General
*Attorneys for State Defendants*

ORIGINAL filed via CM/ECF
and a COPY e-mailed
this same date to:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 N. 12th Street, Suite 101
Phoenix, AZ 85014
tconnelly@millsandwoods.com
docket@millsandwoods.com
*Attorneys for Plaintiffs*

Dee An Gillespie Strub
Natalie Newell
Gillespie, Shields, & Taylor
7319 N. 16th Street
Phoenix, AZ 85020
dgillespie@gillaw.com
nnewell@gillaw.com
mailroom@gillaw.com
*Co-Counsel for Plaintiffs*

Daniel J. O'Connor, Jr.
Danny O'Connor, III
O'Connor Law
7955 S. Priest Drive
Tempe, AZ 85284
daniel.oconnor@occlaw.com
danny.oconnor@occlaw.com
*Attorneys for Defendant Bonnie Platter*

Nathan T. Metzger
Grasso Law Firm
3075 W. Ray Rd., Ste. 110
Chandler, AZ 85226
*Nathan.metzger@grassolawfirm.com*
*Attorneys for Defendants Walter and Jodi Lay*

s/ G. Ybarra

LMS20-0147 / G202020275-1