Daniel J. O'Connor, Jr., Bar No. 010081
Danny O'Connor III, Bar No. 034188
**O'CONNOR LAW FIRM, P.C.**
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
danny.oconnor@occlaw.com
602-241-7000
*Attorneys for Defendant Bonnie Platter*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Aaron Wostrel, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>State of Arizona, et al.,<br><br>Defendants. | Case No.: 22-cv-00312-PHX-DLR<br><br>**DEFENDANT BONNIE PLATTER'S MOTION FOR SUMMARY JUDGMENT**<br><br>***Oral Argument Requested***<br><br>(Assigned to the Honorable Douglas L. Rayes) |

Pursuant to FED. R. CIV. P. 56, Defendant Bonnie Platter ("Defendant" or "Platter") moves for summary judgment and respectfully requests all of Plaintiffs' claims against her be dismissed with prejudice. This Motion is supported by the following Memorandum of Points and Authorities. To the extent applicable, Defendant hereby joins and fully incorporates the facts and arguments in State Defendants' and Lays Defendants' respective Motions for Summary Judgment. (Docs. 210 and __).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court has previously ruled that Defendant Platter is entitled to absolute immunity, and the undisputed facts show that none of her actions fall outside the scope of that immunity.

Plaintiffs' "out-of-court" allegations, contending she directed DCS actions and decisions, amount only to communicating on her clients' behalf, to potential witnesses and Plaintiffs' counsel, or otherwise lack any evidence from which a reasonable juror could conclude she did. To the extent the Court finds any disputed facts are not shielded by absolute immunity, Platter remains entitled to qualified immunity, and Plaintiffs' claims fail for various other reasons.

## II. FACTUAL BACKGROUND

### a. Procedural Background

Plaintiffs Aaron Wostrel ("Plaintiff") and his minor children, S.W., B.W., and C.W. ("Minor Plaintiffs")(collectively, "Plaintiffs") filed their original Complaint in state court on November 12, 2021. (Doc. 1-3). On February 15, 20222, State Defendants removed it to this Court based upon subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs filed a First Amended Complaint ("FAC") on April 5, 2022. (Doc. 38, *as corrected*).

In their FAC, Plaintiffs alleged seven claims against two Arizona Assistant Attorneys General who were involved in prosecuting Plaintiff's dependency proceedings, Defendant Platter and Defendant Chelsea Herzhaft ("AG Defendants"). Plaintiffs' amended allegations emphasized Platter's actions "unrelated to her role as an attorney," so that she would "not protected by absolute or qualified immunity." (Doc. 38 at ¶ 26). AG Defendants moved to dismiss all claims based on their entitlement to absolute prosecutorial immunity. (Doc. 41). Plaintiffs voluntarily dismissed Defendant Herzhaft (Doc. 58), and the Court dismissed all claims against Defendant Platter which "arise out of her in-court actions." (Doc. 75). The Court specifically identified claim ten, "making misrepresentations and/or omissions to the court," for dismissal, (Doc. 75 at 8), but declined to identify which other claims were predicated on allegations related to her in-court actions. Defendant Platter filed her Answer to Plaintiffs' FAC on May 15, 2023. (Doc. 92).

Plaintiffs then filed a Second Amended Complaint ("SAC") on June 24, 2023. (Doc. 95). In the SAC, Plaintiffs bring five substantive due process claims against Defendant under

42 U.S.C. § 1983: Count Three (right to make medical decisions for Minor Plaintiffs); Count Four (right to be present for Minor Plaintiffs' medical treatment); Count Five (right to make educational decisions for Minor Plaintiffs); Count Six (making misrepresentations and/or omissions to the court); and Count Seven (failing to make reasonable efforts to reunite Plaintiffs). Plaintiffs also maintain a state law claim against Defendant in Count Twelve (intentional infliction of emotional distress).

Noting the SAC contained claims previously dismissed by the Court (Doc. 75), as well as notice of claim and statute of limitations issues raised by State Defendants under 12(b)(6) – equally applicable to Defendant Platter as a state employee – Plaintiffs agreed to file a Third Amended Complaint to attempt to conform to the Court's prior Orders. (Doc. 101). The Court extended Defendants' responsive pleading deadline until fourteen days after Plaintiffs filed a Third Amended Complaint. (Doc. 104). Plaintiffs ultimately failed to do so.

**b. <u>Relevant Undisputed Facts</u>**

This lawsuit arises from the State of Arizona's removal of Minor Plaintiffs from their mother's custody on January 30, 2017, and the ensuing dependency actions contested by their father, Plaintiff. Plaintiffs allege, generally, that all Defendants violated their rights by intentionally prolonging their family reunification until April 14, 2020. The background of the removal and case management has been detailed extensively in the parties' prior and current briefings, and the Court's prior Orders. The following facts are limited to those relevant to claims against Platter only; to the extent additional undisputed facts established by State Defendants and Lays Defendants are equally applicable to Platter's liability, *e.g.* establishing preclusion, no violations of rights, no duties, or no causation, Platter hereby incorporates those facts and arguments herein.

Defendant Platter was an Assistant Attorney General at the Arizona Attorney General's Office ("AGO") from August 3, 2013 to May 28, 2021. (Ex. 1 at 30-31:19-15). Her involvement in this matter began, at the earliest, on October 10, 2017, when she transferred

to the "Phoenix 2" Unit within Attorney General's Office ("AGO"), in a "mentoring" capacity. (Ex. 1 at 82-85:20-14). At the time, Chelsea Herzhaft was responsible for prosecuting the Minor Plaintiffs' dependency case. (Ex. 1 at 86:19-22). Throughout the course of the dependency proceedings, including two trials and two appeals, several other Assistant Attorneys General were also assigned to the case, while Defendant mentored them and participated to various degrees at different points in time. (Ex. 1 at 88-90:10-21).

Around the end of 2017, Defendant began to familiarize herself with Plaintiffs' case after Ms. Herzhaft sought her counsel on how to communicate with Plaintiff, who was acting *pro se* at the time. (Ex. 1 at 100-103:4-5). In her capacity as DCS's attorney, she help prepared court documents and appeared in court on behalf of DCS (Ex. 1 at 104:20-24); she a communicated with her clients and provided them with legal advice on how to comply with court orders (*e.g.*, Ex. 1 at 109:1-4); she communicated with potential witnesses including Minor Plaintiffs' placement and GAL, and psychologists DCS contracted with to provide evaluations of Plaintiffs (*e.g.*, Ex. 1 at 112-143); and she communicated with all counsel, including Plaintiffs'. (*Eg.*, Ex. 1 at 103:6-10).

For example, she communicated with Dr. Juliano only to prepare him for trial; she had no role in what information DCS provided to him. (Ex. 1 at 112-114:23-11; 121:11-25). In response to Dr. Juliano's testimony at trial, the court ordered another psychological evaluation of Plaintiff. (Ex. 1 at 139-140:16-9).

She communicated with Dr. Thal regarding his scheduled psychological evaluation of Plaintiff; she provided her views of the case to prepare him for the evaluation, and eventually, his testimony at trial. (Ex. 1 at 129-133:17-20). She did not direct or schedule the evaluation; DCS did. (Ex. 1 at 126-127:20-7). Ultimately, Dr. Thal never completed an evaluation, and the parties agreed to engage Dr. Oakley instead. (Ex. 1 at 142:17-24).

She communicated with Dr. Oakley regarding her psychological evaluation of Plaintiff; she provided DCS's records and DCS's referral questions for the evaluation. (Ex. 1 at 195-

199:9-12). Again, she did not select Dr. Oakley for the evaluation; Plaintiff did. (Ex. 1 at 142-143:22-20).

Similarly, Platter shared DCS records with Dr. Bennett's office for his bonding assessment, because those records had already been compiled and disclosed in the first trial; again, she had no role in deciding what information was provided to him. (Ex. 1 at 114-116:12-9). Dr. Bennett was engaged by DCS, not Platter or AGO. (Ex. 1 at 147:18-21).

Platter also communicated with Plaintiff's counsel on behalf of DCS, including at their specific direction. (Ex. 1 at 126-7:20-15). In part due to hostile communications between Plaintiff and DCS workers, at some point, the parties agreed to communicate everything through their respective attorneys, including coordinating visitations, CFT, and evaluations. (Ex. 1 at 92-93:9-9). Platter's communications on these matters merely conveyed DCS's actions and decisions, not her own.

Prior to obtaining her law license, and starting in May of 2001, Platter worked for Child Protective Services ("CPS," now Department of Child Services or "DCS") and the Department of Economic Security ("DES"). (Ex. 1 at 19-25:23-13). Based on this professional background, Plaintiffs have made vague and conclusory allegations that she acted like a DCS case worker or manager, directing other DCS employees on "operational" or "management" decisions, and taking actions outside the scope of her role as a prosecuting attorney (Doc. 95 at ¶¶ 161-162). Plaintiffs case against Platter hinges on these allegations to evade her entitlement to absolute immunity. However, after nearly four years of discovery, is no evidence to support them.

Beyond her actions taken inside a literal courtroom, (Doc. 95 at ¶¶ 191-4; 215-6; 228; 234-6; 239; 242; 251-2; 263), Plaintiffs' allegations mainly concern Platter "directing" the

actions of Defendant Obika, one of DCS's case managers[1]. (Doc. 95 at ¶¶ 240, 270, 272-3). When Defendant Obika was asked whether Platter "told [him] what services to implement for Mr. Wostrel," he testified unambiguously, "No." (Ex. 2 at 114:7-14). Defendant Obika could not recall even talking to Platter about his decisions to "make a referral for a bonding assessment," (Ex. 2 at 114:20-23), "whether Dr. Juliano's evaluation was complete," (Ex. 2 at 114-115:24-2), "whether or not… the twins should be returned home after Dr. Bennett recommended that the twins be returned to Mr. Wostrel," (Ex. 2 at 115:3-11), "whether or not the Department should return… the twins to Mr. Wostrel while the petition for certification to the Supreme Court was pending," (Ex. 2 at 115:12-17), and "whether or not [he] should implement therapeutic visitations between Mr. Wostrel and Serenity." (Ex. 2 at 116:9-15).

While the second dependency trial was pending on appeal, Defendant Obika submitted a referral for a psychological evaluation of Mr. Wostrel. (Ex. 2 at 125-127:8-19). He testified that it would be normal DCS procedure to "staff" or meet with his supervisors prior to submitting such a referral. (*Id.*). He did not recall who attended that staffing, but testified that "[t]he AG's office are not… in the staffing. When we staff at the Department for psychological evaluation or any evaluation, they are not there. You know, so I never met [Platter] in any of my staffing with my supervisor or with BM." (*Id.*). Consistent with this, Platter unambiguously testified that she did not step into Defendant Obika's shoes and never "directed some of the actions that a case manager should be taking." (Ex. 1 at 108-109:17-8; 112:16-22). She did not have authority to, and never did, direct DCS decisions or what positions to take with respect to Plaintiffs' case management. (Ex. 1 at 269-272-:17-18).

---

[1] Platter specifically joins State Defendants' arguments that Defendant Obika's actions were reasonable and not actionable. (Doc. 210 at 12-13; 17-21). Platter cannot be liable for "directing" or participating in actions that are not unconstitutional or otherwise actionable.

Plaintiff testified he never had any personal interactions with Ms. Platter outside of court and e-mails, and that he has no personal knowledge of Platter directing DCS's actions in this case (Ex. 3 at 369-370:6-4). Defendant Long testified he could not recall ever attending a meeting with Platter regarding Plaintiff's psychological evaluations. (Ex. 4 at 114:10-15). Defendant Keith could not recall Platter being "unusually active" or "exercis[ing] influence over placement or visitation or dismissal determinations" in the Wostrel case. (Ex. 5 at 55-56:8-10). No DCS employees have ever stated that Platter directed any of their actions or decisions, including what positions or services should be provided to the Wostrel family.

## III. APPLICABLE LAW

### a. <u>Standard</u>

The Court must grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party "must come forth with evidence from which a jury could reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

**b. <u>Due Process Violations Under 42 U.S.C. § 1983</u>**

The elements of a § 1983 claim are (1) the action was committed by a person acting "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1107 (9th Cir. 2022) (*quoting West v. Atkins*, 487 U.S. 42, 48 (1988)). To be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010). "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) (*quoting Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.*; *see also Chaudhry v. Aragon*, 68 F.4th 1161, 1169 nn.11-12 (9th Cir. 2023).

A substantive due process claim requires egregious and arbitrary government conduct that "shock[s] the conscience and offend[s] the community's sense of fair play and decency." *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013) (quoting *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012). A procedural due process claim requires: (1) deprivation of a constitutionally protected liberty or property interest, and (2) denial of adequate procedural protections. *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. Of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010).

There exists a fundamental liberty interest in "the right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, (2000). That right, however, is not absolute. A parent must "adequately care for his or her children." *Id.* at 68. So long as a parent provides adequate care, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the

ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* (*citing Reno v. Flores*, 507 U.S. 292, 304, (1993)).

This right includes the liberty "to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer,* 202 F.3d 1126, 1141 (9th Cir. 2000). Similarly, parents have a right "to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted). Likewise, children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations—particularly those, such as here, that are invasive or upsetting." *Wallis*, 202 F.3d at 1142.

In addition, "the 'liberty of parents and guardians' includes the right 'to direct the upbringing and education of children under their control.' " *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (*citing Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)).

**c. <u>Intentional Infliction of Emotional Distress ("IIED")</u>**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct, and (3) the defendant's actions caused the plaintiff to suffer severe emotional distress. *Ford v. Revlon*, Inc., 153 Ariz. 38, 43 (1987).

Arizona courts apply a case-by-case analysis to determine whether a plaintiff has offered sufficient proof of severe emotional distress. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79 (1986). "A line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.' " *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199 (App. 1982) (citation omitted); *see also* RESTATEMENT (SECOND)

OF TORTS § 46 cmt. j (1965) (liability only arises when emotional distress is extreme; "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people."). Thus, crying, being stressed and upset, and having occasional trouble sleeping is not enough to establish severe emotional distress. *Midas Muffler Shop*, 133 Ariz. at 199. On the other hand, anxiety that results in physical symptoms such as high blood pressure, a nervous tic, chest pains, fatigue and dizziness may constitute severe emotional distress. *Ford*, 153 Ariz. at 41; *see also Pankratz v. Willis*, 155 Ariz. 8, 12, 17 (App. 1987) (anger and depression coupled with physical ailments such as headaches and hemorrhoids supported claim for emotional distress).

## IV. ARGUMENT

### a. **Plaintiffs' Judicial Deception Claim Fails Because Platter Is Entitled to Absolute Immunity**

Count Six of Plaintiffs' SAC is substantively identical to Count Ten of Plaintiff's FAC, which was previously dismissed by the Court based upon her entitlement to absolute immunity. (Doc. 75). In it, Plaintiffs continue to make allegations that are purely prosecutorial, relating to Defendant's actions or omissions with respect to court proceedings, including that she failed to disclose or mention the Wyoming ICPC report to the court (Doc. 95 at ¶ 353), and submitted "fabricated" notes by Defendant Obika to the court. (Doc. 95 at ¶ 357). (*See also* Doc. 95 at ¶¶ 191-4; 215-6; 228; 234-6; 239; 242; 251-2; 263).

Prosecutors are entitled to immunity for actions taken in their official capacities. *See e.g., Imbler v. Pachtman*, 424 U.S. 409 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Kalina v. Fletcher*, 522 U.S. 118 (1997). Prosecutorial immunity is absolute when the prosecutor acts "within the scope of his or her authority and in a quasi-judicial capacity." *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986), *citing Imbler*, 424 U.S. at 430–31. Absolute immunity for prosecutors relates to judicial immunity and is based upon the same public policy considerations. *Imbler*, 424 U.S. 409, at 422–23. Absolute immunity applies to "initiating a

prosecution and in presenting the State's case," and extends to civil suits for damages under 42 U.S.C. § 1983. *Id.* at 431; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (absolute immunity is a complete defense to lawsuits seeking monetary damages under § 1983.). The same doctrine of absolute immunity is extended to governmental attorneys engaged in civil enforcement proceedings. *See Butz v. Economou*, 438 U.S. 478, 516–17, (1978).

There is no dispute Platter had the authority to initiate and prosecute the dependency actions under A.R.S. § 41-193(A)(2) and was, at all relevant times, "acting under the color of law." (Doc. 95 at ¶ 20). Plaintiffs made no substantive changes to the allegations contained in Count Six; there remain no allegations of any actions outside the plain functions of Platter's prosecutorial duties in the dependency proceedings. There can be no dispute that Count Six must again be dismissed based on absolute immunity.

Notwithstanding Platter's immunity, Plaintiffs can offer no evidence Defendant Obika's notes were "fabricated," much less that Platter knew they were "fabricated" when she submitted them in court. Likewise, Plaintiffs can offer no evidence Platter was in possession or aware of the Wyoming ICPC report before it was ultimately filed with the court.

**b. <u>Plaintiffs' Parental Rights Claims Fail for Lack of Sufficient Evidence</u>**

Counts Three, Four, and Five concern Plaintiff's rights to make medical and educational decisions for Minor Plaintiffs, and Plaintiff's rights to be present for Minor Plaintiffs' medical treatments. For each of these claims, Plaintiffs make only vague and conclusory allegations against Platter, globally alongside multiple State Defendants. (Doc. 95 at ¶¶ 320, 326, and 331).

The only specific allegation concerning Platter with respect to these claims is that she directed Defendant Obika to not inform Plaintiff that S.W. ran away from home and was admitted to a mental health facility in April of 2020. (Doc. 95 at ¶ 269-73). Plaintiffs can produce no evidence to support this claim.

The record is equally devoid of evidence Platter directed or scheduled medical or education appointments for Minor Plaintiffs. Undisputed facts show DCS scheduled Minor Plaintiffs' appointments, and at most, Platter occasionally conveyed that information to Plaintiff's counsel, as an intermediary for her client. (*E.g.*, Ex. 1 at 92-93:9-9; 126-7:20-15). Plaintiff's must prove causation for their injuries." *Bearchild,* 947 F.3d 1150. Plaintiffs cannot demonstrate how merely communicating decisions and actions taken by her client, DCS, caused their alleged constitutional deprivations.

Moreover, these communications between counsel, even if somehow improper, were within her role as an advocate, and entitled to absolute immunity. *See Asque v. Commonwealth Allegheny County*, No. 07-294, 2007 WL 1247051, at *5 (D. Pa. Apr. 27, 2007) (finding that "[c]ommunicating with a defendant or defense counsel" falls within the ambit of prosecutorial immunity).

Finally, a two-year statute of limitations applies to § 1983 claims brought in Arizona. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). § 1983 claims accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* The Court has already ruled that all of Plaintiff's federal claims are time-barred with respect allegations occurring before November 12, 2019. (Doc. 75 at 11-12.) This applies equally to Platter. Of the remaining allegations, Plaintiffs cannot produce evidence Platter had any personal involvement directing, scheduling, or hiding C.W.'s 2020 tonsillectomy and S.W.'s 2020 mental health treatment. (Doc. 95 at ¶¶ 320(i)-(k); 326(e)-(f)). To the extent Plaintiff relies on any other of their allegations in Counts Three, Four, and Five with respect to Platter[2], they must be barred under the applicable statute of limitations.

---

[2] The SAC in fact makes no specific connections to Platter with respect to these allegations, and the undisputed facts show Platter had no connection to the dependency proceedings until October 10, 2017, at the earliest. (Ex. 1 at 82-85:20-14). The most recent allegations contained in Counts Three, Four, a Five besides the ones noted above occurred in September of 2017. (Doc. 95 at ¶ 320; 326).

**c. <u>Plaintiffs' "Reasonable Efforts" Claim Fails</u>**

Count Seven of Plaintiffs' SAC alleges Platter violated their rights by "failing to make reasonable efforts to reunite them" with Plaintiff. (Doc. 95 at 46). Again, Plaintiffs make no specific allegations against Platter, but lump her in with multiple State Defendants.

As a basis for this alleged constitutional right, Plaintiffs cite Arizona statutes and case law concerning DCS. Platter is not a DCS employee and she never had physical or legal custody of Minor Plaintiffs; she never had a duty to "make reasonable efforts to reunite" them with Plaintiff. Even if she was or did, no such constitutional right exists, and § 1983 claims cannot arise out of alleged violations of state law[3]. *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012); *see also, Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1098 (D. Ala. 2023); *Suter v. Artist M.*, 503 U.S. 347, 363 (1992).

To the extent Plaintiffs state a viable claim, all allegations relevant to Platter either lack evidence or are, again, protected by absolute immunity. In addition to conduct that is "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430., "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," which are nonetheless entitled to absolute immunity. *Id.*, at 431, n. 33. For example, out-of-court "effort to control the presentation of a witness' testimony" is entitled to absolute immunity because it is "fairly within [the prosecutor's] function as an advocate." *Id.*, at 430, n. 32. The undisputed facts show that all of Platter's actions and communications were related to, in furtherance of, and in preparation for, prosecuting the dependency proceedings. Any allegations concerning Platter's intent, motive, or state of mind concerning these actions are irrelevant. *Ashelman*, 793 F.2d at 1077–78.

---

[3] Platter specifically joins State Defendants' arguments that Count Seven is not actionable. (Doc. 210 at 23-24).

**d. Plaintiffs' IIED Claim Fails**

Count Twelve, Plaintiffs' lone state-law claim against Platter for intentional infliction of emotional distress, must fail for the same reasons it failed against the other State Defendants. A.R.S. § 12-821.01(A) mandates that a party seeking to bring a claim against a public employee, like Platter, must file a "notice of claim" within 180 days of the action accruing. *Walton v. Arizona*, 2017 WL 5997441, *3 (D. Ariz. 2017) ("The requirement of filing a notice of claim is mandatory on claims against public entities and individual public employees."). "If a notice of claim is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute." *Falcon ex rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006) (*en banc*). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements ...." *Id.* Proper service of a notice of claim is governed by Ariz. R. Civ. P. 4.1(d). *Simon*, 225 Ariz. at 61; A.R.S. § 12-821.01(A). Rule 4.1(d) requires that a party serve an individual personally, leave the notice of claim at the individual's residence with another resident of suitable age and discretion, or deliver the notice of claim to someone authorized to accept service on behalf of the individual. Ariz. R. Civ. P. 4.1(d).

The Court has already agreed that state-law claims could not proceed against State Defendants who were not properly served with a notice of claim, and that mailing a notice of claim to a Defendant does not constitute proper service under Rule 4.1(d). (Doc. at 10-11.) Plaintiffs attempted to serve Platter with a notice of claim in precisely the same manner as State Defendants: by certified mail. (Ex. 6). Consequently, Plaintiffs' state law claim against Platter must equally be barred under A.R.S. § 12-821.01(A).

Notwithstanding Plaintiffs' notice of claim deficiencies, Plaintiffs' IIED claim separately fails for want of evidence they suffered "severe emotional distress," and that Platter's actions were "extreme and outrageous," causing their alleged severe emotional distress. *Ford*, 153 Ariz. 38, 43. Plaintiffs cannot produce evidence they suffered any significant physical symptoms related emotional distress. *Midas Muffler Shop*, 133 Ariz. 194, 199. To the

extent they can, they cannot prove Platter specifically caused them. Moreover, while Plaintiffs' allegations in Count Twelve are merely vague and conclusory, to the extent any of Platter's alleged "extreme and outrageous" conduct arose from her actions in the dependency proceedings, and as an advocate of DCS, absolute immunity applies. *See e.g., State v. Superior Court In & For County of Maricopa*, 186 Ariz. 294 (App. 1996); *Challenge, Inc. v. State ex rel. Corbin*, 138 Ariz. 200, 205, (App. 1983); *Mulligan v. Grace*, 136 Ariz. 483, 484–85 (App. 1983) (the same doctrine of absolute immunity applies in Arizona state-law claims). Again, Plaintiff is not aware of any specific actions Platter took outside of the dependency proceedings. (Ex. 3 at 369-370:6-4).

**e. <u>Platter is Entitled to Qualified Immunity</u>**

In the alternative, and at minimum, Platter is entitled to qualified immunity for all claims against her. Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was " 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

A government official's conduct violates "clearly established" law when " 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " *Id.* at 741. Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In other words, the case law must "have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). *See also Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.") (cleaned up); *Sharp v. Cnty. of Orange*, 871 F.3d 901, 910-11 (9th Cir. 2017) "[T]he prior precedent must be 'controlling'—from the Ninth

Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911 (citation omitted). The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Here, the undisputed facts show that none of Plaintiffs' rights were violated, and that Platter's actions amount to, at most, vigorously prosecuting the dependency proceedings, for which she is entitled absolute immunity. Plaintiffs' "out-of-court" allegations, that she directed DCS employee's actions, lack any evidence from which a reasonable juror could conclude she did. The remaining allegations against Platter amount only to communicating with her clients, or on her clients' behalf, with potential witnesses, and Plaintiffs' counsel. To the extent those actions are not equally shieled by absolute immunity, Plaintiffs cannot identify any clearly established law – sufficiently analogous and binding – to put her on notice that her such actions violated Plaintiffs' constitutional rights.

## V. CONCLUSION

For these reasons, Defendant Bonnie Platter respectfully requests her Motion be granted, and all of Plaintiffs' claims be dismissed with prejudice.

Dated this 22nd day of October 2026

**O'CONNOR LAW FIRM, P.C.**

By: /s/*Danny O'Connor III*
Daniel J. O'Connor, Jr.
Danny O'Connor III
*Attorneys for Defendant Bonnie Platter*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A Notice of Electronic Filing will be served to the following registered participants:

| | |
|---|---|
| DeeAn Gillespie Strub<br>Gillespie, Shields & Taylor<br>7319 N. 16th Street<br>Phoenix, AZ 85020<br>dgillespie@gillaw.com<br>*Attorneys for Plaintiffs* | Thomas A. Connelly<br>Robert T. Mills<br>Sean A. Woods<br>Mills & Woods Law, PLLC<br>5055 N. 12th Street, Suite 101<br>Phoenix, AZ 85014<br>rmills@millsandwoods.com<br>swoods@millsandwoods.com<br>tconnelly@millsandwoods.com<br>*Attorneys for Plaintiffs* |
| Michael R. Niederbaumer<br>Stephanie Elliott<br>Thomas E. Young<br>Assistant Attorneys General<br>Attorney General's Office<br>2005 N. Central Avenue<br>Phoenix, AZ 85004<br>michael.niederbaumer@azag.gov<br>Stephanie.Elliott@azag.gov<br>Thomas.young@azag.gov<br>*Attorneys for State Defendants* | Nathan T. Metzger<br>Karl J. Gruse<br>Grasso Law Firm<br>3075 W. Ray Road, Suite 110<br>Chandler, AZ 85226<br>nmetzger@grassolawfirm.com<br>kgruse@grassolawfirm.com<br>*Attorneys for Defendants Walter and Jodi Lay* |

By: */s/J. Garcia*

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Deposition transcript of Bonnie Platter, dated April 24, 2026 |
| 2 | Deposition transcript of Paulinus Obika, dated March 18, 2026 |
| 3 | Deposition transcript of Aaron Wostrel, dated June 16, 2025 |
| 4 | Deposition transcript of Nicholas Long, dated March 23, 2026 |
| 5 | Deposition transcript of Jason Keith, dated April 21, 2026 |
| 6 | Plaintiff's certified mail receipt for notice of claim to Bonnie Platter |